Edward **VIENS** and Joseph Perruquet, Plaintiffs–Appellants,

v.

Harold **DANIELS**, Adrian Barber, Daniel Stock and Judy Pedersen, Defendants–Appellees.

No. 88–2092.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1989.

Decided March 29, 1989.

Rehearing and Rehearing En Banc Denied June 13, 1989.

---

CUDAHY, Circuit Judge.

Plaintiffs-appellants Edward Viens and Joseph Perruquet are inmates in the Stateville Correctional Center in Joliet, Illinois. On the morning of January 17, 1983, officials at Stateville discovered two makeshift ladders against the prison's outer wall. A count of inmates revealed that no one had actually escaped; the escape attempt had been abandoned for unknown reasons. That same morning, Perruquet reported to the prison infirmary with a fractured left foot and strained ligaments in his right foot; he claimed that he had sustained the injuries in a fall down a flight of stairs. Viens stated that he had been walking down the stairs ahead of Perruquet and had turned to see Perruquet falling.

An investigative report prepared by prison staff concluded that Perruquet had attempted to escape, with Viens' assistance. This finding was based primarily on the statements of inmate Daniel Slaughter that Perruquet had confessed his own responsibility for, and Viens' complicity in, the attempted escape. The report also relied on the opinion of Perruquet's doctor that Perruquet's injuries could not have been caused in the manner he claimed. Both plaintiffs denied any involvement in the attempted escape. Neither Viens nor Perruquet agreed to submit to a polygraph examination; however, Slaughter was examined, and tested truthful to all questions.

In early May, 1983, Perruquet and Viens received disciplinary reports charging them with attempting escape and aiding an attempted escape, respectively. Both men appeared before the prison's Adjustment Committee a week later. The committee denied Viens' and Perruquet's requests that certain witnesses be called, and that they be given an opportunity to examine the physical evidence. Instead of hearing live testimony, the committee based its finding of guilt entirely on the report of the internal investigation, which recounted the results of interviews with Slaughter and Perruquet's physician, and the report of Slaughter's polygraph examination. Based on the guilty finding, the Adjust-

Kathleen L. Roach, Sidley & Austin, Chicago, Ill., for plaintiffs-appellants.

Bret A. Rappaport, Asst. Atty. Gen., Illinois Attorney General's Office, Chicago, Ill., for defendants-appellees.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

ment Committee revoked 360 days of each plaintiffs' good time credits, ordered plaintiffs placed in disciplinary segregation for 360 days and demoted the plaintiffs from "A" grade to "C" grade for 360 days.

Viens and Perruquet filed this suit under 42 U.S.C. section 1983 on July 21, 1983. They sought the following relief: a declaration that the defendants' conduct was unconstitutional; return to the general prison population from disciplinary segregation; return to their jobs, with back pay; and compensatory and punitive damages. Plaintiffs did not seek restoration of good time. Over the next four years, defendants filed a motion to dismiss and answers to plaintiffs' initial and amended complaints. None of the defendants' papers raised plaintiffs' failure to exhaust state remedies as an affirmative defense. On February 4, 1987, the district court granted summary judgment to the defendants on some of plaintiffs' claims, including the allegation that the Adjustment Committee had imposed discipline without sufficient evidence.

The parties then filed their final pretrial order with respect to plaintiffs' remaining claims; once again, defendants did not raise any exhaustion issue. A trial of plaintiffs' claims began on October 5, 1987, but was aborted due to logistical problems involving plaintiffs' presence in the courtroom. The case was rescheduled for trial on May 16, 1988. In the interim, defendants filed a second summary judgment motion; again no exhaustion issue was raised. On the day the second trial was scheduled to begin, five years after the commencement of the action, the trial court raised the exhaustion issue *sua sponte.* After briefing, it ruled that under this court's decision in *Hanson v. Heckel,* 791 F.2d 93 (7th Cir.1986), the plaintiffs were required to exhaust state remedies before proceeding with their section 1983 claim. The court therefore dismissed the action. Plaintiffs appeal the district court's dismissal and the summary judgment on their sufficiency of the evidence claim.

I.

Although exhaustion of state remedies is not generally required under section 1983, the district court held that exhaustion was required here because a judgment for plaintiffs would act as collateral estoppel in a later habeas corpus proceeding seeking restoration of good time. The federal habeas statute, 28 U.S.C. section 2254, requires exhaustion of state remedies. The district court believed that section 2254's policy of giving state courts the first opportunity to rule on matters affecting the duration of a state prisoner's confinement would be undermined if a prisoner were allowed to bring a section 1983 damages action without first applying to state court. The plaintiff could then use a favorable federal judgment as a basis of collateral estoppel in a state habeas action seeking the actual restoration of good time. In the case before us, however, the Adjustment Committee, as the outcome of the hearings challenged here, imposed substantial discipline on the plaintiffs apart from the revocation of good time. In these circumstances, exhaustion of state remedies should not be a prerequisite to filing a section 1983 suit; we therefore reverse the district court's dismissal of plaintiffs' otherwise viable section 1983 claims.

The Supreme Court first discussed the relationship of sections 2254 and 1983 in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In *Preiser,* three state prisoners whose good-time credits had been revoked for disciplinary infractions brought section 1983 actions claiming that the credits had been denied without due process of law. All three prisoners sought injunctive relief ordering prison authorities to restore the good-time credits. None of the prisoners had exhausted his state remedies prior to filing suit in federal court.

The Supreme Court held that the prisoners could not sue under section 1983, which contains no exhaustion requirement, despite the fact that their suits fell within the literal terms of that statute. The Court noted that habeas corpus was the traditional remedy where a prisoner sought "to

secure release from illegal custody," *id.* at 484, 93 S.Ct. at 1833; therefore, section 2254, with its exhaustion requirement, provided a specific federal remedy for the injuries the prisoners had allegedly suffered and displaced any remedy they may have had under section 1983. "[W]hen a prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. at 1842.

In support of their position that exhaustion should not be required, the prisoners in *Preiser* noted that sections 1983 and 2254 are not identical—specifically, money damages are available under section 1983 but not in a habeas action. Based on this difference they argued that a section 1983 suit should not be dismissed simply because the constitutional violation alleged could also form the basis of a habeas corpus action. In response, the Court noted that the crucial issue was not whether *the facts alleged* could form the basis for both a section 1983 and a habeas claim; instead, the distinguishing feature between a section 1983 action and a habeas petition was *the relief requested.*

> [R]espondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.

*Id.* at 494, 93 S.Ct. at 1838 (emphasis original). The Court noted:

> If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his

latter claim, under our decision today, is cognizable only in federal habeas corpus, with its attendant requirement of exhaustion of state remedies. But ... that holding in no way precludes him from simultaneously litigating in federal court, under § 1983, his claim relating to the conditions of his confinement.

*Id.* at 499 n. 14, 93 S.Ct. at 1841 n. 14. Thus *Preiser* apparently held that the crucial distinction between a section 1983 action and a habeas petition is the relief sought. If a prisoner seeks an injunction restoring good time, and thereby reducing his term of incarceration, his sole federal remedy is habeas corpus; if he seeks damages, section 1983 relief is available.

This reading of *Preiser* was confirmed in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* as in *Preiser,* the prisoner alleged that the procedures used to deprive him of good time were unconstitutional. However, unlike *Preiser,* the prisoner in *Wolff* sought both restoration of good time and money damages. The Court held that *Preiser* did not foreclose the latter claim.

> The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under *Preiser.* But the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S., at 499 n. 14, 93 S.Ct. at 1841 n. 14. Respondent's damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time.... Such a declaratory judgment as a predicate to a damages award would not be barred by *Preiser;* [ ] under that case only an injunction restoring good time improperly taken is foreclosed
>
> ....

We therefore conclude that it was proper for the Court of Appeals and the District Court to determine the validity

of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, *short of ordering the actual restoration of good time already cancelled.*

*Id.* 418 U.S. at 554–55, 94 S.Ct. at 2973–74 (footnote omitted; emphasis added). *See also Gerstein v. Pugh,* 420 U.S. 103, 107 n. 6, 95 S.Ct. 854, 859 n. 6, 43 L.Ed.2d 54 (1975) (§ 1983 action appropriate where pre-trial detainees sought probable cause hearing; "Because release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy.").

But our story does not end here. In *Hanson v. Heckel,* 791 F.2d 93 (7th Cir. 1986) (per curiam), a state prisoner alleged that he had been denied good-time credits "with no procedural protections at all," *id.* at 96, in violation of the due process clause. The prisoner "requested that the district court enter a declaratory judgment and award damages for the alleged deprivation of meritorious good time; he did not request the award or restoration of any credits." *Id.* at 94. Although, based on the prayer for relief, the case would appear closer to *Wolff* than *Preiser,* this court held that the prisoner's sole remedy was in ha-

beas corpus. The court refused "to determine the applicability of *Preiser* solely by reference to the *relief* sought rather than by reference to the *nature of the claim.*" *Id.* at 96 (emphasis original). Instead, where "there exists an undeniably direct and specific relationship between the challenged conduct and a change in the prisoner's release date" the prisoner's sole remedy is a habeas petition, with its attendant exhaustion requirement. *Id.*

We adhered to the result of *Hanson* in *Crump v. Lane,* 807 F.2d 1394 (7th Cir. 1986). Although noting that the "broad holding" of *Hanson* "would appear to conflict with the Supreme Court's decision in *Wolff,*" the court found the case before it indistinguishable from *Hanson,* and considered itself bound to follow that decision. *Id.* at 1400. The court observed that "[i]t would appear that under certain circumstances at least, a prisoner may pursue a § 1983 action in federal court without first exhausting his state court remedies even though, as in *Wolff,* the claims raised in the § 1983 action are virtually identical to those raised in a habeas corpus proceeding," *id.* at 1401; unfortunately, the court did not specify exactly what those "certain circumstances" might be.[1]

---

1. Other circuits have also generally held that a section 1983 action is barred even though the suit does not explicitly request the restoration of good time. *Offet v. Solem,* 823 F.2d 1256 (8th Cir.1987); *Hernandez v. Spencer,* 780 F.2d 504, 505 (5th Cir.1986) (prisoner must exhaust state remedies before pursuing § 1983 claim "where the factual allegations of a complaint could give rise either to habeas relief or to civil rights remedies"); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 681–82 (9th Cir. 1984); *Todd v. Baskerville,* 712 F.2d 70, 73 (4th Cir.1983); *McKinnis v. Mosely,* 693 F.2d 1054, 1057 (11th Cir.1982); *but see Monk v. Secretary of the Navy,* 793 F.2d 364, 367–68 (D.C.Cir.1986) (Bork, J.) (dictum; "Taken together, *Preiser* and *Wolff* establish that when a prisoner challenges action other than his underlying conviction, the nature of the relief requested determines whether habeas corpus is the exclusive federal remedy."); *Georgevich v. Strauss,* 772 F.2d 1078, 1086–87 (3d Cir.1985) (en banc) (§ 1983 action proper where prisoner challenges "the *manner* by which the prison authorities reach their decision and not the *outcome* of their decision" (emphasis original)), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986); *Williams v. Ward,* 556 F.2d 1143, 1150–51 (2d Cir.)

(Friendly J.) (§ 1983 action proper where it challenged *procedures* by which release decision made, rather than *outcome* of decision), *cert. dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977).

Somewhat inconsistently, this court has held that a state prisoner may challenge the procedures by which a parole decision was made in a section 1983 action, even though an action seeking parole would only lie in habeas corpus. *Huggins v. Isenbarger,* 798 F.2d 203, 204 (7th Cir.1986); *see also id.* at 207 (Easterbrook, J., concurring) (noting tension between parole hearing cases and *Hanson v. Heckel* ).

Where a prisoner employs section 1983 to attack his underlying criminal trial or conviction, the exercise of federal jurisdiction may directly interfere with ongoing state judicial proceedings, and the relationship of sections 1983 and 2254 may be governed by somewhat different considerations. *See, e.g., Tower v. Glover,* 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984) (declining to decide whether § 1983 may be employed to attack state criminal conviction; noting possible relevance of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to this issue); *Scruggs v.*

■ While there would appear to be significant tension between the Supreme Court's decisions in *Preiser* and *Wolff*, on the one hand, and our own decisions in *Hanson* and *Crump*, on the other, we need not resolve the possible conflict in order to decide the present appeal. The hearings which Viens and Perruquet challenge not only resulted in the revocation of good time; based on the evidence developed at the hearings, the Adjustment Committee also placed appellants in disciplinary segregation for 360 days and reduced their grade to "C", with the loss of privileges which such a change entails. And, as the Supreme Court recognized in both *Preiser* and *Wolff*, a section 1983 action is proper where a prisoner challenges the *conditions* of his confinement, rather than its *duration*. *See McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir.1982) (despite circuit precedent similar to *Hanson*, § 1983 action proper where prisoner challenged placement in segregation and denial of visitation, rather than revocation of good time).

Despite the fact that the conditions of Viens' and Perruquet's incarceration were significantly altered as a result of the disciplinary hearing, the defendants argue that the suit is still, in essence, a habeas petition, since an adjudication of the constitutionality of the hearing procedures would presumably act as collateral estoppel in a later state habeas proceeding seeking restoration of good time. Defendants cite *Offet v. Solem*, 823 F.2d 1256 (8th Cir.1987), in support of their argument. In *Offet*, the court noted that "*Wolff* appears to direct federal courts to determine the appropriate remedy in cases such as this one solely by reference to the relief requested." *Id.* at 1260. Despite this observation, and over a strong dissent, the court held that a section 1983 action should be stayed pending exhaustion of state remedies whenever an adjudication in federal court might serve to collaterally estop a state habeas proceeding.

The analysis advanced by the defendants, and adopted by the Eighth Circuit in

*Offet*, ultimately proves too much. As was suggested at oral argument, under the collateral estoppel standard the state could insulate every imposition of discipline from attack under section 1983 by simply revoking one hour, or one day, of good time as part of every punishment it imposed. Defendants' attorney admitted that this would be true, but argued that the state prisoner would only lose a little time; on the other hand, counsel stated that the interests of comity and federalism which would be served by an exhaustion requirement were weighty indeed.

We cannot accept such off-hand treatment of the importance to a state prisoner of prompt access to federal court under section 1983 where the prisoner alleges that the conditions of his confinement violate the constitution. As Judge Arnold's dissent in *Offet* observed, "the policy favoring exhaustion is not the only policy operating in this area. There is also a policy, stated by Congress in § 1983, making available a federal forum for actions complaining of deprivation of federal rights under color of state law." *Id.* at 1262.

*Preiser* noted that in several then-recent decisions the Court had held that section 1983 was available to a prisoner "making a challenge to the conditions of his prison life." 411 U.S. at 498–99, 93 S.Ct. at 1840–41. In one of the cited decisions, the Court specifically held that it was error to dismiss a prisoner's section 1983 suit challenging the procedures by which he was placed in solitary confinement. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *see also Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam); *Houghton v. Shafer*, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam); *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam). Access to federal court should not therefore be curtailed or delayed merely because disciplinary action involves, among other things, a revocation of good time.

*Moellering*, 870 F.2d 376, 378–379 (7th Cir.1989); *Monk v. Secretary of the Navy*, 793 F.2d at

366–68.

Finally, the Supreme Court held in *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), that a section 1983 plaintiff need only exhaust state remedies where Congress specifically provided for exhaustion. The Court reviewed the legislative history of section 1983, and found three "recurring themes" in the debates which were relevant to the exhaustion issue. First, in enacting section 1983, "Congress assigned to the federal courts a paramount role in protecting constitutional rights." *Id.* at 503, 102 S.Ct. at 2561. A second important theme "was the belief of the 1871 Congress that the state authorities had been unable or unwilling to protect the constitutional rights of individuals." *Id.* at 505, 102 S.Ct. at 2562. Third, the debates indicated that Congress intended to provide a section 1983 plaintiff with a choice whether to litigate initially before a state or federal tribunal. *Id.* at 506, 102 S.Ct. at 2562–63.

■ The decision in *Patsy* suggests that *Preiser*'s exhaustion requirement should not be too expansively construed. Since the disciplinary sanctions (other than revocation of good time) imposed in the present case are not subject to the *Preiser* rule if considered independently, a federal court need not stay its hand merely because these sanctions were imposed concurrently with a revocation of good time. *Hanson v. Heckel* does not bar a section 1983 action challenging the procedures used at a prison disciplinary hearing where the hearing resulted, as in this case, in the imposition of significant sanctions other than the revocation of good time. This is true even though good-time credits were revoked as a result of the same hearing. In this case, Viens and Perruquet were removed from the general prison population for almost a year and lost the privileges associated with their prison grade as a result of the Adjustment Committee hearing they now attack. These punishments are substantial; plaintiffs do not challenge these sanctions merely as a pretext to attack the revocation of good time. In these circumstances, it is not consonant with *Preiser* and *Wolff* for the district court to have dismissed plaintiffs' suit because of their failure to exhaust state remedies. We will therefore reverse and remand with respect to plaintiffs' due process claims involving the hearing procedure.

## II.

■ Viens and Perruquet also challenge the district court's grant of summary judgment to defendants on their claim that the imposition of discipline was not supported by sufficient evidence. Since the Adjustment Committee's finding of guilt was supported by "some evidence," as required by the due process clause, we affirm the district court's grant of summary judgment.

*Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), establishes the standard for review of the sufficiency of the evidence supporting the conclusions of a prison disciplinary board. In *Hill*, a prison guard heard sounds of a scuffle in a prison walkway. When he entered the walkway, he saw a prisoner on the ground, bleeding from the mouth and with a swollen eye. The guard saw three inmates running from the scene. However, the victim of the assault denied that the accused prisoners had beaten him. The Supreme Court held that this evidence was sufficient to support the revocation of good-time credits.

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56, 105 S.Ct. at 2774–75. Turning to the specific evidence involved in the case before it, the Court observed that

> [t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due pro-

cess in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Id.* at 457, 105 S.Ct. at 2775. Significantly, in discussing the evidence the Court did not refer to evidence tending to exculpate the accused prisoners—specifically, the fact that the victim denied that his fellow inmates had assaulted him. However, under the Court's "any evidence" or "some evidence" standard, this omission makes sense. Although the exculpatory evidence would presumably have allowed the disciplinary board to reach a contrary conclusion, it did not nullify or directly negate the evidence of guilt on which the board relied. Under *Hill*, the courts are barred from assessing the relative weight of the evidence. It is therefore in general immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied or there are other extra-ordinary circumstances.

Courts have followed this approach in decisions after *Hill*. While the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability, *see Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987), once the court has found the evidence reliable, its inquiry ends—it should not look further to see whether other evidence in the record may have suggested an opposite conclusion. *Brown v. Frey,* 807 F.2d 1407, 1414 (8th Cir.1986); *see also Culbert v. Young,* 834 F.2d 624, 630–31 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988); *Turney v. Scroggy,* 831 F.2d 135, 140 (6th Cir.1987).

In the present case the Adjustment Committee's decision was based largely on the statements of an informant, Slaughter. According to the prison investigator's summary of Slaughter's statements, Perruquet confessed his attempted escape to Slaughter, and also implicated Viens as an accomplice in the attempt. Slaughter was given a polygraph exam, and tested truthful on all aspects of his account. The board's conclusion was also supported by the opinion of Perruquet's treating physician that Perruquet's injuries could not have been caused by a fall down the stairs, as Perruquet claimed.

The plaintiffs do advance an argument which tends to undermine the reliability of Slaughter's account, and is therefore proper for us to consider. Plaintiffs note that the investigator's report of Slaughter's statement indicates that Slaughter spoke to Perruquet on the afternoon of January 17, 1983; but Perruquet was hospitalized at 9:00 a.m. on January 17 and could not have spoken to Slaughter. However, while unclear, the investigator's report can be read to say that Slaughter spoke to Perruquet briefly in the early morning of January 17 (before Perruquet went to the infirmary) but did not receive a full account of the crime until January 18, immediately after Perruquet's release. Particularly since Slaughter's version of the incident was verified by polygraph, we cannot conclude that the evidence was so unreliable that it could not constitutionally have served as the basis for the Adjustment Committee's action.

Plaintiffs also argue that the Adjustment Committee's conclusion is not supported by "some evidence" because the committee refused to consider evidence which plaintiffs wanted to introduce. Specifically, plaintiffs asked the committee to call the prison guards assigned to Perruquet's cell block, who Perruquet argues would have testified that he was in his cell on the night of the escape. The plaintiffs also sought Perruquet's treating physician and x-ray technician, who would have established that he could not have returned to his cell after abandoning the escape, due to the severity of his injuries. If these witnesses had testified as plaintiffs contend, their testimony would have created a conflict in the evidence. However, Slaughter's statement would remain, and would still provide

**1336**

"some evidence" to support the disciplinary committee's finding that the plaintiffs were guilty of attempted escape. Under *Hill*, we are not to weigh the evidence; since the additional testimony would not have undercut the reliability of the evidence on which the board relied, it does not affect our conclusion that the Adjustment Committee's decision was supported by sufficient evidence to comport with the requirements of due process.[2]

### III.

The district court was mistaken in dismissing plaintiffs' procedural due process claims based on their failure to exhaust state remedies. However, the record does support the district court's conclusion that the Adjustment Committee's finding was supported by some evidence in the record, and summary judgment on this claim was justified. For these reasons the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. As the majority points out, the Adjustment Committee imposed substantial discipline on the plaintiffs apart from the revocation of good time. This action therefore is primarily a challenge to the conditions of confinement, not its duration, and there is no requirement that the plaintiffs exhaust state remedies. This is a far cry from the situation before the court in *Hanson v. Heckel*, 791 F.2d 93 (7th Cir.1986) (per curiam), where the plaintiff, by the artificial manipulation of the relief sought, attempted to transform a habeas corpus action into a civil rights action.

With respect to the sufficiency of the evidence, the court is quite right in conclud-

ing that, under the standard of review established in *Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the record is adequate to support the conclusions of the prison disciplinary board.

---

**2.** A prison disciplinary body may not arbitrarily refuse to consider exculpatory evidence offered by a prisoner simply because the record already contains the minimal evidence suggesting guilt required by *Hill*. In this connection, where a prisoner believes he was denied a meaningful opportunity to contest the charges against him due to a disciplinary board's refusal to consider evidence or allow the prisoner access to rele-

vant materials, the challenge is one of procedural due process rather than sufficiency of the evidence. Our remand for further proceedings on the plaintiffs' procedural due process claim insures that Viens and Perruquet will have the opportunity to present evidence that the Adjustment Committee acted arbitrarily in finding them guilty of attempted escape.