724 F.Supp. 568 (1989)
Charles RUCKER, Plaintiff,
v.
Ralph JOHNSON, et al., Defendants.
No. 88 C 7510.
United States District Court, N.D. Illinois, E.D.
September 29, 1989.
*569 *570 Charles Rucker, Cave In Rock, Ill., pro se.
Richard W. Merrill, Jr., Lawrence R. Lasusa, Office of the Illinois Atty. Gen., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
HART, District Judge.
Plaintiff Charles Rucker was confined at the Sheridan Correctional Center in Illinois. He brought suit against various prison employees challenging disciplinary actions taken against him based on charges of using marijuana in violation of prison rules. Defendants have moved for summary judgment.
In his complaint, plaintiff requests monetary damages for lost earnings, compensatory damages, and punitive damages. He also seeks reversal of all disciplinary action taken against him. The discipline ordered in May 1988 consisted of revocation of 30 days' good time, 30 days' segregation, demotion to C grade for 90 days, and reclassification to maximum security status. The segregation and demotion presumably have already been served and thus can only be compensated monetarily. He has been transferred at least twice since May 1988 and there is nothing to indicate injunctive relief on the reclassification is anything but moot. Correcting any improper revocation of good time is something that can be done only through habeas corpus proceedings, not through the present § 1983 action. See Viens v. Daniels, 871 F.2d 1328, 1330-34 (7th Cir.1989). Since defendants are all state employees, the Eleventh Amendment prevents the award of any damages in their official capacity. Therefore, plaintiff's only possible relief is monetary damages from the defendants in their individual capacities. If the law supporting such relief was not clearly established as of May 1988, defendants are entitled to qualified immunity. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Rakovich v. Wade, 850 F.2d 1180 (7th Cir.) (en banc), cert. denied, ___ U.S. ___, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).
The adjustment committee summary[1] gives the following description of the evidence presented.
Dr. Wessel of Health Care unit indicates that if a person smokes marijuana it is normally gone within 30 days, and if were to submit a specimen it would test negative.
Special Report by c/o Landsteiner and SmithKline Laboratory results reviewed, Lab No. 0507219.
Resident states he was not smoking marijuana on 5-16-88 and has not smoked any marijuana since arriving at Sheridan 14 months ago. Rucker also submitted a written statement which the Adjustment Committee reviewed.
The reasons given for finding Rucker smoked marijuana were as follows:
Special Report by c/o Landsteiner indicates on 5-16-88, as he passed cell 27 in building C-19, he smelled what he thought to be marijuana. Cell 27 was assigned to Rucker who was present. Laboratories results from SmithKline Lab indicate the specimen submitted by Rucker on 5-16-88 did test positive to contain cannabis. Due to these reports, and the testimony from Dr. Wessel, this committee feels reasonably sure Rucker was smoking marijuana on 5-16-88, as intimated by c/o Landsteiner. Release from Investigative status.
Rucker complains the evidence was insufficient to support the discipline. It is only necessary that "some evidence" support the decision of the committee. Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); Viens, 871 F.2d at 1334-35. Plaintiff's own exculpatory testimony is irrelevant to determining if the some evidence standard is satisfied. Id. at 1335. Rucker argues that the supporting evidence is insufficient *571 because the urinalysis drug test is not sufficiently reliable. One court in this circuit has considered this question and found that the EMIT test, with positives confirmed by TLC testing, is reliable evidence. Wykoff v. Resig, 613 F.Supp. 1504, 1512 (N.D.Ind. 1985). This is consistent with the majority view which finds the EMIT alone to be not sufficiently reliable, but confirmation by second EMIT tests or other tests to be sufficiently reliable. See Pella v. Adams, 702 F.Supp. 244, 247 (D.Nev.1988) (collecting cases). The EMIT test with a followup TLC test were the tests performed on Rucker's urine. Although the reliability of the tests is a factual question,[2] the existing precedents would ensure defendants are entitled to at least qualified immunity from damages even if plaintiff could prove the EMIT/TLC tests are not as reliable as has been found in other reported cases. Therefore, no material factual dispute would exist.
Plaintiff also argues there is evidence that the committee did not have the urinalysis results at the time it made its decision. The decision is dated May 27, 1988. The urinalysis report submitted by defendants (Exhibit F) states in part:

LAB NO. 0507219
DATE COLLECTED 05/16/88
TIME COLLECTED 7:45 PM
DATE ENTERED 05/17/88
DATE REPORTED 05/18/88 8:28 AM
REPORT STATUS FINAL

It is date stamped as received in Sheridan's Medical Department on May 20, 1988 at approximately 12:15 p.m. There is also an affidavit from the person who received the report and forwarded it to the committee. Defendants also submit a letter from the technical director of SmithKline dated June 12, 1989 (Exhibit M) in which he states, "The date entered into our system was May 17, 1988, and the date a final report was issued was June 19, 1988." Pointing to the June 19 final report date, plaintiff argues the committee had no urinalysis test to rely on at the time of his hearing. He claims reference to the urinalysis report in the committee summary was fabrication or speculation as to expected positive results. At most, however, the letter (to the extent it is admissible evidence on this issue) indicates a final report was not issued until June 19. The dates on the report itself are consistent with the report being available to the committee and the "Lab No." given in the committee summary is the same as that on the report, which indicates the report was available to the committee. No factual dispute is created.[3]
Distinct from the adequate evidence question, see Viens, 871 F.2d at 1336 n. 2, plaintiff argues there were two procedural irregularities as well. He argues the notice he was given was inadequate and that he was not provided with a copy of the urinalysis report. The notices provided to plaintiff were adequate. The first notice, served on Rucker on May 16, recites the alleged offense and states it occurred on May 16 at approximately 3:07 p.m. It identifies the officer making the report and that he claimed to have smelled marijuana at a specific location which was Rucker's cell. It is not deficient because prepared 5 hours after the event. The second notice was served on Rucker on May 23 and states in part, "Internal Affairs has received the results of Inmate Rucker's urine test. According to the drug screen test, it shows that Inmate Rucker had cannabis in his system on May 16, 1988." The "date and time of observation" is set forth as May 23, 1988 at 10:30 a.m. The body of the report, however, makes clear that the *572 offense being referred to occurred on May 16. The notices were adequate.
In Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), the Supreme Court held that the minimum requirements of due process for a parole revocation proceeding include "disclosure to the parolee of evidence against him." The Court, however, did not elaborate as to what was meant by disclosure. See United States ex rel. Miller v. Twomey, 479 F.2d 701, 716 n. 33 (7th Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court adapted the minimum requirements set forth in Morrissey to prison disciplinary proceedings. There is, however, no discussion of the disclosure of evidence requirement. The Court did limit the confrontation of witnesses requirement to the discretion of prison officials in light of prison security and safety needs. See id. at 567-69, 94 S.Ct. at 2980-81. Thus, at least one circuit has held that decisions as to the provision of documentary evidence to prisoners is left to the discretion of prison officials. See Langton v. Berman, 667 F.2d 231, 235 (1st Cir.1981); Domegan v. Fair, 603 F.Supp. 360, 364 (D.Mass.1985). In Chavis v. Rowe, 643 F.2d 1281, 1285-86 (7th Cir.), cert. denied, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), the Seventh Circuit held the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), applied to prison disciplinary proceedings. In Chavis, the adjustment committee had an investigatory report that included statements by a witness that were exculpatory of Chavis. The investigatory report was not provided to Chavis. The court held that, absent security needs, the report (or if security needs justified it, the substance of the report) should have been provided and a due process claim is stated if the "materiality" requirement for a Brady claim is satisfied. Evidence is material if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. See United States v. Jackson, 780 F.2d 1305, 1309-10 (7th Cir.1986). Chavis has been read as only requiring that the prisoner be apprised of the substance of the evidence. See Mendoza v. Miller, 779 F.2d 1287, 1296 (7th Cir.1985), cert. denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); Harris v. MacDonald, 555 F.Supp. 137, 139 (N.D.Ill. 1982). In Wykoff, 613 F.Supp. at 1514, it was held, without any discussion or explanation, that Wolff mandates the disclosure of EMIT test results. In Waterman v. Iowa, 387 N.W.2d 776, 778-79 (Iowa Ct. App.1986), the court held the failure to provide a copy of EMIT test results used by the disciplinary committee did not violate due process when it was not requested by the prisoner and some evidence supported the committee's decision.[4]
Rucker's letter to the adjustment committee, which the committee notes as having been reviewed, requested a copy of the urinalysis report. Rucker's affidavit states it was not provided. One of the disciplinary reports provided to Rucker accurately states the urinalysis test showed cannabis in Rucker's system on May 16. In his letter to the adjustment committee, Rucker did not question the accuracy of the test. He instead argued cannabis in his system remained from 22 years of marijuana use prior to imprisonment and he requested the committee question "drug testing chemists" as to whether, after such long-term use, any cannabis would still be in his urine 14 months after he last smoked marijuana. Dr. Wessel testified that the answer to that question was no. Rucker presents no argument as to how obtaining the report would have aided him in his case. The report contains no information as to reliability of the test and does not even state the type of test used. To the extent plaintiff would have further requested information as to the test used, he would have found out it was the EMIT test with a followup TLC test. Even if he found out a TLC test had not yet been completed as of *573 his May 27 hearing, he could only have succeeded in delaying the result of his hearing.
Rucker's claim as regards the failure to provide a copy of the urinalysis report fails for a number of reasons. First, as indicated by Mendoza and Harris, provision of the substance of the contents of a document will satisfy the requirement that a document be provided. The May 23 disciplinary ticket stated the substance of the urinalysis report and informed Rucker the committee would be considering the report. Second, the Seventh Circuit precedents indicate failure to provide the report or its substance would not have violated due process. If failure to inform a prisoner of exculpatory evidence does not violate due process unless the evidence is material, inculpatory evidence must also be material for failure to provide it to be a due process violation. As discussed above, the report was not material in the Brady sense in that there is no reasonable probability providing it would have changed the outcome of the hearing. Third, it was not clearly established in 1988 that the report had to be provided to Rucker. Wykoff's unsupported holding did not clearly establish the law, especially in light of the other precedents discussed.[5] Defendants, therefore would be qualifiedly immune.
IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of entry of this order.
NOTES
[1] Spelling errors in the committee summary have been corrected; grammar has not been changed.
[2] Neither party submits any evidence as to the reliability of the testing procedures.
[3] To the extent the June 12, 1989 letter means there was no final report until June 19, 1988 because that is when the followup TLC test was final, the defendants would still be entitled to qualified immunity. As of May 1988, it was not clearly established in the Seventh Circuit that the EMIT test alone is not reliable enough to satisfy the some evidence requirement. Also, if, as plaintiff argues, the committee referred to the urinalysis results on the assumption they would later receive a confirming report, it is an open question in the Seventh Circuit whether such a procedure can be upheld. See Wagner v. Williford, 804 F.2d 1012, 1016 (7th Cir.1986) (avoiding question of whether post-decision finding of reliability of informant permissible). Again, defendants would, at a minimum, be entitled to qualified immunity.
[4] As previously stated, the Seventh Circuit holds the some evidence determination is distinct from procedural questions such as the disclosure of evidence. See Viens, 871 F.2d at 1336 n. 2.
[5] Although plaintiff has no cognizable due process claim upon which he can obtain relief, the committee's failure to allow him to see a copy of the urinalysis report is not condoned. The report was key evidence as to the charges against him and there does not appear to be any security justification for refusing to provide a copy of the report. Disciplinary committees ordinarily should provide copies of such reports to a prisoner being charged with drug use. See J. Gobert & N. Cohen, Rights of Prisoners § 8.04, Supp. to n. 67 (1981, Supp.1989). Even if access to the report is not ordinarily outcome determinative, it will aid the prisoner in preparing his or her defense, or possibly show the prisoner he or she has no defense. And if it is outcome determinative, that is material in the Brady sense, failure to provide it will likely be a cognizable due process violation.