27 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Christopher NOVAK, Plaintiff-Appellant,
v.
Thomas HUSKISSON, et al., Defendants-Appellees.
 No. 93-2843.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1994.*
Decided July 5, 1994.
 
 Before CUMMINGS, BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Christopher Novak, an inmate confined at the Pontiac Correctional Center in Pontiac, Illinois, filed this civil rights action (42 U.S.C. Sec. 1983), alleging that his due process rights were violated during a prison disciplinary proceeding where he was found guilty of assault, gang or unauthorized organizational activity, and intimidation or threats against another inmate. Cross-motions for summary judgment were filed. Following an award of judgment in favor of the defendants, Novak moved for reconsideration on the ground that the court had failed to consider his response to the defendants' motion. Upon review, the district court, by minute order, affirmed its earlier ruling.** Having considered the arguments raised by appellant, we too are unpersuaded that district court erred and therefore for the reasons stated in the district court's order,*** we affirm the grant of summary judgment in favor of the defendants.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 2
 Christopher Novak, Plaintiff,
 
 
 3
 vs.
 
 
 4
 Thomas Huskisson, et al., Defendants.
 
 
 5
 June 16, 1993.
 
 No. 92-1252
 ORDER
 
 6
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff claims that the defendants, various Department of Corrections and Pontiac Correctional Center officials, violated the plaintiff's constitutional rights by denying him due process in prison disciplinary proceedings. This matter is before the court for consideration of the parties' cross-motions for summary judgment.[1] For the reasons stated in this order, judgment will be granted in favor of the defendants.[2]
 
 
 7
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985).
 
 
 8
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988).
 
 FACTS
 
 9
 The plaintiff is a state prisoner, confined at the Pontiac Correctional Center at all times relevant to this action. The defendants Thomas Huskisson and Albert Esquivel are Adjustment Committee hearing officers. The defendant Richard Gramley is the Warden at Pontiac. The defendant Howard Peters is the Director of the Illinois Department of Corrections. The defendant Leora Harry is the chairperson of the Administrative Review Board.
 
 
 10
 The following facts are uncontested: On November 6, 1991, the plaintiff received an inmate disciplinary report at the Dixon Correctional Center. The plaintiff was charged with violating prison rules 102 (assault), 205 (gang or unauthorized organizational activity), and 206 (intimidation or threats). The disciplinary report did not identify the inmate whom the plaintiff was alleged to have assaulted.
 
 
 11
 On November 13, 1991, the plaintiff appeared before the prison Adjustment Committee. The plaintiff's requested witness, an Officer Harris, was not called; instead, he submitted a written report. The plaintiff was found guilty of the charges and received a one-year across the board penalty. The plaintiff also was transferred to the Pontiac Correctional Center.
 
 
 12
 Following his transfer, the plaintiff filed a prison grievance regarding the disciplinary proceedings; the Administrative Review Board (ARB) remanded the matter for rehearing because the alleged victim had not been identified in the disciplinary report. Accordingly, the plaintiff was served a rewritten disciplinary report on December 16, 1991. The date of the offense was changed, and confidential informants were unnamed.
 
 
 13
 Following a second hearing at the Pontiac Correctional Center on December 23, 1991, the plaintiff once again was found guilty and received a one-year across the board penalty.
 
 
 14
 The plaintiff filed a renewed grievance; the matter once again was remanded so that additional information could be added to the Basis for Decision. The plaintiff's third and final grievance, culminating in a hearing and personal interview before the ARB on January 23, 1992, was denied at all levels of review.
 
 
 15
 The plaintiff claims that the Adjustment Committee violated his rights by having only two hearing officers, by failing to state its reasons for disbelieving the exonerating statements of the plaintiff's witness, by relying on the investigative report instead of making any independent fact-finding, by denying his request for witnesses, by denying a continuance, by giving him an unduly harsh punishment, and by not setting forth sufficient reasons for its decision. The plaintiff further charges that Peters and Harry "acquiesced" in the alleged violations.
 
 DISCUSSION
 
 16
 No material facts are in dispute, and the court concludes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, the court discerns no denial of due process in the prison disciplinary proceedings. Furthermore, the record supports the guilt finding on all counts. Finally, the plaintiff has no triable cause of action regarding the denial of his grievance relating to the purportedly defective disciplinary proceedings. Accordingly, the defendants' motion for summary judgment will be granted.
 
 
 17
 The plaintiff has no cause of action regarding the original disciplinary proceedings. The Administrative Review Board remanded the matter for rehearing. Since the first ticket was subsequently vacated, any procedural defect in those proceedings is inconsequential.
 
 
 18
 With respect to the rewritten charges, the disciplinary proceedings satisfied due process. An inmate facing internal charges is entitled to: (a) receive advance written notice of the charges against him; (b) appear in person before an impartial hearing body to contest the charges; (c) call witnesses and present documentary evidence in his defense (subject to the discretion of correctional officials; and (d) receive a written statement of the reasons for the disciplinary action taken. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974); Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir.1988). Here, the plaintiff received all the procedural safeguards mandated by the Constitution.
 
 
 19
 There is no question as to whether three of the four prongs of Wolff were satisfied. The plaintiff admits that he received [an improved] disciplinary report stating the charges against him in advance of the hearing, that he was allowed to appear before the Adjustment Committee, and that he received the Adjustment Committee summary stating its reasons for finding him guilty of gang activity, assault and intimidation or threats.
 
 
 20
 However, the parties contest whether the plaintiff requested witnesses. In his affidavit, Huskisson states that the plaintiff did not request witnesses and the Adjustment Committee summary indicates that no witnesses were requested. Additionally, the witness-request portion of the disciplinary report [Exhibit C to the complaint] is not detached. The plaintiff has not submitted an affidavit or other evidence refuting the defendants' position.
 
 
 21
 However, irrespective as to whether the plaintiff made a proper, timely request, the contested issue is not outcome-dispositive. First, the plaintiff was not denied the opportunity to present witness testimony. The plaintiff was allowed to tender the affidavit of witness David Alencastro, and Officer Harris submitted a written report. According to Huskisson, witnesses generally are not called to testify at disciplinary hearings. Rather, a witness usually is interviewed by an investigator and a written statement is submitted to the Committee, as was done in this case. The testimony of the plaintiff's witnesses thus was heard and considered.
 
 
 22
 In any event, Huskisson has provided grounds for refusing to call the plaintiff's witnesses to testify personally. Prison adjustment committees must state, either in the disciplinary record or in open court proceedings, their reasons for denying a request for witnesses. Ponte v. Real, 471 U.S. 491, 497 (1985). As Huskisson explains in his affidavit, because the alleged infractions had occurred at Dixon, calling live witnesses at Pontiac simply was not feasible. Furthermore, live testimony would have been cumulative since the Committee had the investigation report, as well as the witnesses' written statements. The plaintiff did not have a constitutional right to have live witnesses present at his disciplinary hearing.
 
 
 23
 The purported denial of a continuance on the rewritten charges did not deprive the plaintiff of due process. The record contains no evidence that the plaintiff actually requested a continuance: the disciplinary record contains no reference to such a request, and the plaintiff does not appear to have raised that issue in his three separate grievances. In fact, although the plaintiff noted a denial of a continuance in his complaint, neither party addressed that matter in their three motions for summary judgment.
 
 
 24
 However, even assuming that the plaintiff did make such a request and the continuance was denied, the matter does not rise to the level of a constitutional violation. The plaintiff does not indicate, and the court cannot conceive, how a continuance might have served him. The plaintiff does not allege that he was unable to obtain any additional information crucial to his defense; furthermore, the plaintiff already had been given ample time to prepare for the hearing, as the charges had been pending for approximately two months at the time of the re-hearing. [It should further be noted that the original proceedings were remanded only to correct a minor technical defect, i.e., failure to name the plaintiff's alleged victim.] Because the plaintiff has shown no harm stemming from the alleged denial of a continuance, he has no due process claim.
 
 
 25
 Moreover, the plaintiff was not constitutionally entitled to a hearing panel of three members. According to Ill.Admin.Code, tit. 20, Sec. 504.70(a) (1991):
 
 
 26
 The Chief Administrative Officer shall appoint the Adjustment Committee, which shall be composed of at least two members. (1) The Adjustment Committee shall include a member of the program staff and a member of the security staff. (2) At least one member of the committee shall be a minority staff member.
 
 
 27
 Albert Esquivel is an Hispanic program staffer; Thomas Huskisson is a captain. Although the court is aware that prison Adjustment Committees often consist of three hearing officers, the court finds no authority mandating three-member panels. Furthermore, the plaintiff makes no allegation that the defendant hearing officers were non-impartial. The makeup of the Adjustment Committee complied with prison guidelines.
 
 
 28
 The plaintiff's argument that there was an inadequate statement of reasons for finding him guilty is without merit. It is important to note that this court does not sit in review of the correctness of prison disciplinary decisions. The plaintiff can prevail on his Fourteenth Amendment claim only if the procedures used to arrive at that sanction do not comport with due process. There is sufficient basis for a reviewing court to approve the disciplinary board's decision if "some evidence" supports the decision made by the board. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir.1984). Here, the record is satisfactory.
 
 
 29
 The officer who issued the rewritten disciplinary ticket reported the following observations:
 
 
 30
 During the course of an investigation it was determined by inmate testimony, inmate identification, physical injuries and the assaulting inmates' presence near the location of the incident, that inmate Christopher Novak, A73069, participated with other inmates in the assault of Inmate Oscar Compeon, B14247, on the night of 10/30/91 in Housing Unit 26, Room 41. Inmates Christopher Novak, A73069, Juan DeJesus, N62263 and David Alencastro, N83143 were positively identified by the victim through testimony and photo identification as being the assailants. Testimony by the victim indicates that he (victim) was shown several homemade knives, verbally threatened with bodily harm and hit by the assailants numerous times in the face and body with closed fists. The victim sustained numerous injuries as the result of the assault. The injuries consisted of: abrasions below the right eye, left forehead and left temple area, edema to the bridge of the nose, numerous areas of bruising to the left upper chest, left shoulder, left upper back, left rib cage area and right shoulder area. Inmates Novak, DeJesus and Alencastro are housed in the same Housing Unit (Housing Unit 26) as the victim. Inmates Novak, DeJesus and Alencastro are known members of the Latin Kings organization. The assault on the victim was a violation brought about by the belief that the victim was supplying information to the Administration. The names of the inmate witnesses are being withheld from this report for security reasons. This Inmate Disciplinary Report is being amended and rewritten as requested by the Administrative Review Board.
 
 
 31
 After reviewing the available information, which included two investigation reports and four incident reports, the Committee found the plaintiff guilty of the offenses charged. Their stated reasons for the decision were as follows:
 
 
 32
 Based on the observation of reporting employee in that an inmate was assaulted by this inmate. This inmate assaulted the victim named in the disciplinary report, the positive ID of inmate by reporting employee, this inmate stated at the hearing he refused polygraph testing. Based in the DCA-21-921 page # 2 states that this inmate was involved in the assault of the victim, the inmate movement sheet which is on file at DIXON C.C. places inmate in the unit at the time of the assault, the Committee is satisfied the violation occurred as reported.
 
 
 33
 The fact that the victim suffered severe injuries inconsistent with having fallen out of bed, the plaintiff's presence at the time of the assault, his refusal to submit to a polygraph examination, the three assailants' admitted association in the Latin Kings gang, the contradictory statements by the plaintiff and his witnesses concerning the incident, and the victim's testimony, which was corroborated by confidential witnesses--all provided ample basis for the guilt finding. The disciplinary record leaves no doubt as to the Adjustment Committee's reasoning process.
 
 
 34
 The plaintiff's constitutional rights were not violated by the use of confidential informants. Inmates do not have a right to confront or cross-examine witnesses against them at disciplinary hearings. Mendoza v. Miller, 779 F.2d 1287, 1292 (7th Cir.1985); cert. denied, 476 U.S. 1142 (1986). Because the defendants have indicated that the identities of the witnesses were withheld for security reasons (i.e., those inmates' safety), they have articulated a legitimate reason for keeping that information confidential.
 
 
 35
 The defendants, furthermore, have demonstrated sufficiently the reliability of the confidential informants' testimony. Id., 779 F.2d at 1293; Dawson v. Smith, 719 F.2d 896, 899 (7th Cir.1983), cert. denied, 466 U.S. 929 (1984). According to the affidavit of Timothy Stump, the Internal Affairs officer who investigated the alleged beating, the statements of the confidential informants were in complete accord with the victim's account. The plaintiff had information concerning the charges adequate to prepare a defense. See Rasheed-Bey v. Duckworth, 969 F.2d 357, 362 (7th Cir.1992). The record provides sufficient notice of the charges and indication of the confidential informants' reliability to meet constitutional standards.
 
 
 36
 The plaintiff's assertion that the Adjustment Committee failed to consider exonerating evidence is groundless. When exculpatory evidence is available, a prison committee's statement must mention the existence of such evidence and provide a reason for not accepting the exculpatory evidence. Campbell v. Henman, 931 F.2d 1212, 1213 (7th Cir.1991); Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir.1981), cert. denied, 454 U.S. 907 (1981). Here, the record expressly contains the reasons for rejecting the plaintiff's defense that another inmate had committed the assault.
 
 
 37
 According to the investigating officer (based, in part, upon information from a confidential informant), three inmates attacked the victim. The plaintiff's witness, Alencastro, who was identified as one of the aggressors, agreed to take sole blame for the fight because the plaintiff was a ranking member of the Latin Kings and because the third assailant had a looming mandatory release date. The report additionally noted that the statements of the plaintiff and his witness contradicted the other evidence. The plaintiff has failed to demonstrate that there was proof which directly undercut the reliability of the evidence on which the Adjustment Committee relied. See, e.g., Viens v. Daniels, 871 F.2d 1328, 1335 (7th Cir.1989). Amendment prohibits punishments "grossly disproportionate to the severity of the crime," and which involve the "unnecessary and wanton infliction of pain." See, e.g., Rhodes v. Chapman, 452 U.S. 337 (1981); Caldwell v. Miller, 790 F.2d 589, 600 (7th Cir.1986). The Committee imposed one year in segregation, one year's reduction of good conduct credits, and one year's demotion to "C" grade, pursuant to Departmental Rule 504 Table A.[3] The offense of assault alone carries a maximum one-year across-the-board penalty, see Ill.Admin.Code, tit. 20, Sec. 504 Table A 102; therefore, the Adjustment Committee did not exceed prison guidelines. The plaintiff has failed to allege any facts from which the court could conclude that the punishment was so barbarous as to rise to the level of an Eighth Amendment violation.
 
 
 38
 Finally, the plaintiff claims that the defendants Peters and Harry violated his rights by "acquiescing" to the purported constitutional violations. As discussed at length supra, the court has found that the disciplinary proceedings did satisfy due process. Regardless, Illinois' statutory prison grievance procedure creates no substantive rights. Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982). Hence, the plaintiff had no protected interest in the satisfactory resolution of his grievance.[4] The failure of the defendants to rule favorably on the plaintiff's third grievance is not actionable under 42 U.S.C. Sec. 1983.
 
 
 39
 In conclusion, even viewing the record in the light most favorable to the plaintiff, the court finds that the defendants are entitled to judgment as a matter of law. The disciplinary proceedings in question did not violate the plaintiff's constitutional right to due process. Furthermore, the plaintiff has no triable cause of action regarding the denial of his related grievance. Consequently, the defendants' motion for summary judgment will be granted.
 
 
 40
 IT IS THEREFORE ORDERED that the plaintiff's motions for summary judgment (docket numbers 17 and 19) are denied.
 
 
 41
 IT IS FURTHER ORDERED that the defendants' motion to quash (docket # 27) is allowed.
 
 
 42
 IT IS FURTHER ORDERED that the defendants' motion for summary judgment (docket # 22) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 43
 ------/s/ Joe B. McDade
 
 
 44
 ------JOE B. McDADE, United States District Judge
 
 
 
 *
 Appellees filed a Notice of Intent not to file a brief in this appeal. The court subsequently ordered that this appeal be submitted for decision without the filing of a brief by the appellees and without oral argument pursuant to Circuit Rule 31. The court then issued a Circuit Rule 34(f) notice to which there has been no response. See Fed.R.App.P. 34(a); Circuit Rule 34(f). Accordingly, the appeal is submitted on the briefs and record
 
 
 **
 Accordingly, footnote 1 of the district court's June 16, 1993 order does not reflect this subsequent review
 
 
 ***
 One minor correction is noted at the top of page 12, the first line should begin: The Eighth Amendment
 
 
 [1]
 The plaintiff has not filed a brief responding to the defendants' motion for summary judgment
 
 
 [2]
 Additionally, the defendants have filed an unopposed motion to quash the plaintiff's request for production of documents. The motion will be allowed, as the plaintiff's request is untimely. Discovery closed February 26, 1993; in any case, no additional materials would appear to be relevant since both parties have prepared motions for summary judgment
 
 
 [3]
 The Director subsequently reduced the revocation of good conduct credits to six months
 
 
 [4]
 While not binding on the court, the court does note that after remanding the matter two times, the Administrative Review Board held a third hearing and, after reviewing additional information, concluded that the Board was "reasonably satisfied the inmate committed the infraction...."