Edward HAMILTON, Plaintiff,

v.

Daniel SCOTT, et al., Defendants.

No. 85 C 7160.

United States District Court,
N.D. Illinois, E.D.

March 29, 1991.

Albert C. Maule, John P. Ratnaswamy, Hopkins & Sutter, Chicago, Ill., for plaintiff.

Arthur S. Zaban, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward Hamilton ("Hamilton") has sued former Director of the Illinois Department of Corrections ("Department") Michael Lane ("Lane"), Stateville Correctional Center ("Stateville") Warden Michael O'Leary ("O'Leary") and three other Department officials—Vern Scott ("Scott"), Samuel Ingram ("Ingram") and Abraham Flagg ("Flagg")—under 42 U.S.C. § 1983 ("Section 1983"). Hamilton's Amended Complaint (the "Complaint")[1] seeks damages and a declaratory judgment based on alleged violations of his Fourteenth Amendment rights to due process and equal protection in connection with the taking away of certain good time credits.[2]

All defendants have moved for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6), claiming that:

1. O'Leary and Lane cannot be liable for their actions in their roles as supervisors.

2. None of the defendants violated Hamilton's due process or equal protection rights in the process of taking away his good time credits.[3]

---

1. After the case was reassigned to this Court's calendar and it appointed new counsel to represent Hamilton on a pro bono basis, counsel conducted discovery on his behalf and then filed the Amended Complaint to replace Hamilton's original pro se filing.

2. Hamilton's claim is primarily based on the allegation that his good time credits were taken away even though defendants had no evidence of his guilt. That appears to be a due process claim. Although the Complaint fails to mention either due process or equal protection specifically, P.Mem. 1, 9 alleges an equal protection claim

for selective prosecution and P.Mem. 7–8 alleges a procedural due process claim as well.

3. Defendants also raise an immunity defense, but that issue need not be resolved here because, as this opinion explains, Hamilton has failed to allege a claim under Section 1983. Thus there is no viable claim from which the officials could be said to be immune. Nonetheless it is worth noting that, even if this Court had decided that the actions of the officials violated Hamilton's due process rights, it would be difficult to say under the facts pleaded here that defendants had encroached upon a right

For the reasons stated in this memorandum opinion and order, this Court grants defendants' motions on both grounds.

*Facts* [4]

On December 10, 1984 [5] Hamilton, a Stateville prisoner, was in his cell with his three cellmates when they were searched by two correctional officers performing a general shakedown of the prison. On that same day Correctional Officer Lescester Hardin ("Hardin") filed an Inmate Disciplinary Report ("Report") (P.Ex.A) [6] dealing with the results of that search. In the Report Hamilton was charged with a violation of Department Rules 504A–104 ("Dangerous Contraband") and 504A–404 ("Violation of Rules"). Under the Report's section entitled "Observation" Hardin stated (copied verbatim):

> On the above date, location and appx time this officer Lescester Hardin # 585, was shaking down resident Hamilton # N23132 cell 227 in Unit "C" and located a pipe (steel) appx 16½ inches in lenght, a file appx 7½ inches in lenght a sharpened rod appx 11" inches in lenght and three (3) shank appx 9½ inches, 11½ inches and 15 inches in lenght. Resident Hamilton and officers Haywood and Martin were present.

This notification was also part of the Report:

> Please be advised that you have the right to appear before the Adjustment Committee and contest this rule violation charge by presenting a written or oral statement or explanation for your actions. You may present to the Committee relevant physical exhibits such as

records or documents; you have a right to ask that witnesses be interviewed and, if necessary in the Committee's judgment, they may be called to testify during your hearing. In addition, you may ask the Committee to question the witness along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Committee. If you are illiterate or seriously handicapped, you may have the assistance of a staff counselor to help you prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in segregation and/or deprived of your current grade and statutory good time credit.

Hamilton was given a copy of the Report. However, he refused to sign the Report and did not request that any witnesses be called for his hearing (P.Exs. A and C). He did protest to Hardin that the weapons did not belong to him or any of his cellmates, but Hardin responded, "Someone has to take the weight" (¶ 17). Hardin also filed the same charges against Hamilton's three cellmates (¶ 16).

On December 17 a Stateville Adjustment Committee ("Committee") comprising Scott, Ingram and Flagg held separate disciplinary hearings for each of the four inmates based on information contained in the Report filed by Hardin (¶ 19). In part

---

that was "clearly established" at the time of the alleged wrong (*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Lenea v. Lane*, 882 F.2d 1171, 1177–78 (7th Cir.1989)).

**4.** Familiar Rule 12(b)(6) principles require this Court to accept as true all of Hamilton's well-pleaded factual allegations, drawing all reasonable inferences in its favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)). Paragraphs in the Complaint will be cited simply "¶ —."

**5.** All further references to dates without any year designation also refer to 1984.

**6.** This Court may consider the Report and the Adjustment Committee Summary in this motion to dismiss under Rule 12(b)(6) because they were attached to the Complaint. Under Rule 10(c) "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." See, e.g., *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986), considering a copy of an arbitrator's decision that was attached to the complaint in a Section 1983 case. Hamilton also incorporates nearly all the relevant passages of the same documents in the text of his Complaint.

the Adjustment Committee Summary ("Summary") of Hamilton's hearing (P.Ex. C) states that it considered the following evidence:

> Viol[ation] report was read, Inmate states he has no knowledge of the contraband that was found.

In that respect, Hamilton's own account of the proceedings (¶ 21) reads:[7]

> At his disciplinary hearing, Hamilton denied that he had anything to do with the Weapons, told the Adjustment Committee that the Weapons had been found not on him nor in Cell C–227 but in the Vent adjacent to the cell[8] and stated that correctional officers Haywood and Martin would testify the same about where the Weapons were found if they were called as witnesses. One of the members of the Adjustment Committee said: "I believe you, but we've got to give you the same as the others." No other witnesses were called. Hamilton asked that the Weapons be checked for fingerprints, but his request was ignored. Hamilton asked why the four inmates in Cell C–226 had not received tickets, but his question also was ignored.

After describing the matter the Summary concluded:

> Based upon available evidence, the Committee finds the inmate GUILTY of the offense charged ...
>
>    *    *    *    *    *    *
>
> REASONS: Inmate denied guilt to the report. Also the Committee notes inmate is assigned to Cell C–227 and is responsible for whatever is found in the cell.

Based on its decision the Committee imposed 60 days of segregation and 60 days of reduction in grade on all four inmates, and it also recommended 60 days of revocation of good time credit (¶ 21).

Immediately after the hearing, Hamilton and two of his cellmates went to see Stateville Superintendent Cobb to contest the punishment ordered by the Committee (¶ 25). Cobb accepted the prisoner's statements that they had nothing to do with the weapons and agreed to have the punishment of 60 days of segregation reversed, but he refused to alter the other punishment (¶ 25). Cobb then asked O'Leary to implement that modification (¶ 26). On December 18 O'Leary approved only the 60 days of reduction in grade and the 60 days of revocation of good time credit, while disapproving the 60 days of segregation (¶ 27). On February 22, 1985 the Administrative Review Board ("Board") modified that decision further—it approved the revocation of 60 days good time credit for Hamilton but denied the 60 days of reduction in grade (¶ 28). That decision was signed by an unknown person acting for Lane (P.Ex. D).[9] Both O'Leary and the Board relied on the Committee's reasoning when making their decisions (¶ 29).

Hamilton appealed his punishment twice to the Stateville Institutional Inquiry Board with no success. Hamilton also wrote two detailed letters to O'Leary. Then two different Committees considered whether

---

**7.** Those things must be accepted as having taken place for purposes of this motion. But they need not be accepted as establishing the truth from the Committee's perspective of Hamilton's denial of any involvement. As discussed below, this Court may not retry the facts of a case that was before the Committee. Instead the only issue is whether the Committee conducted the hearing in accordance with due process and that its outcome was based on "some evidence."

**8.** [Footnote by this Court] Although it is not clear from this statement, the weapons were taken from the vent through an opening inside Hamilton's cell (¶ 14). From the Summary it appears that the Committee knew that the weapons were taken from the cell, but nothing was said about the particular location inside the cell.

**9.** Although ¶ 20 mistakenly refers to Lane as the "head" of the Board, Hamilton has since retracted that characterization in P.Mem. 11 n. 2. One procedural point bears mention at this stage: Though Hamilton's court-appointed counsel attached another document to their memorandum in opposition to defendants' motion—a Good Time Revocation Recommendation bearing what purports to be Lane's signature reflecting his concurrence in the loss of 60 days good time credit for Hamilton—this Court will not consider that or any other document outside the pleadings on the current motion to dismiss. But even if it were to do otherwise, the conclusion reached here would not be different.

Hamilton's good time credit should be restored, reaching different results (though each with O'Leary's approval): At first no change was recommended, but the second Committee recommended to Lane that the credit be restored based on Hamilton's otherwise clean record. Lane considered that recommendation and restored 30 days of good time credit.

Hamilton's Complaint has also added some facts not alleged to have been known to defendants. Here they are: Next to Hamilton's cell was Cell C–226, in which four members of a gang resided (¶ 18). From their respective cells, the prisoners in Cell C–227 and C–226 had equal access to the vent out of which the weapons were retrieved (¶ 12).[10] Inmates on other floors could also have had access to the vent (¶ 13). No one besides Hamilton and his cellmates were charged with possession of the weapons.

### Alleged Due Process Violations

■ Hamilton invokes the Fourteenth Amendment's guaranty of due process of law before an individual is deprived of "life, liberty or property": He claims he has been deprived without due process of a liberty interest in good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) states that if the state has created "the right to good time":

> [T]he prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

Illinois has in fact created a right to good time credits. Ill.Rev.Stat. ch. 38, ¶ 1003–8–7(e) mandates: [11]

> In disciplinary cases which may involve the imposition of ... the loss of good time credit or eligibility to earn good time credit, ... the Director shall establish disciplinary procedures consistent with the following principles:
>
> (1) Any person or persons who initiate a disciplinary charge against a person shall not determine the disposition of the charge. The Director may establish one or more disciplinary boards to hear and determine charges. To the extent possible, a person representing the counseling staff of the institution or facility shall participate in determining the disposition of the disciplinary case.
>
> (2) Any committed person charged with a violation of Department rules of behavior shall be given notice of the charge including a statement of the misconduct alleged and of the rules this conduct is alleged to violate.
>
> (3) Any person charged with a violation of rules is entitled to a hearing on that charge at which time he shall have an opportunity to appear before and address the person or persons deciding the charge.
>
> (4) The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The person charged may be permitted to question any person so summoned.
>
> (5) If the charge is sustained, the person charged is entitled to a written statement of the decision by the persons determining the disposition of the charge which shall include the basis for the decision and the disciplinary action, if any, to be imposed.

Section 1003–8–7(e) establishes a set of principles for hearing procedures that are mandatory in nature. And thus Hamilton had a right to due process at the hearing that took away his good time credits.

---

**10.** In fact, as n. 8 reflects, the Report "did not state ... exactly where the weapons were found" (¶ 16).

**11.** Further references to sections of chapter 38 of the Illinois Revised Statutes will simply take the form "Section—." That usage comports with the Illinois General Assembly's use of that word and of the symbol "§" in its enactments, even though the publisher of the Smith–Hurd annotated version of the Illinois statutes has chosen to shift to "¶" instead.

With the *right* thus having been established, Hamilton's due process claim as to the *deprivation* of that right contains two principal allegations:

    1. There was no evidence of Hamilton's guilt to support the Committee in finding him guilty of possession of contraband.

    2. In conducting the hearing the Committee denied Hamilton's request to have the weapons checked for fingerprints and it failed to seek out the testimony of other witnesses.

Those issues will be dealt with in turn.

### Sufficiency of the Evidence

    ■ Both in Complaint ¶¶ 32 and 34 and in his memorandum (P.Mem. 5–8) Hamilton repeatedly asserts:

> [E]ach of the defendants ... impos[ed] punishment on him when they knew that there was no evidence that Hamilton was guilty of the disciplinary infraction of which he was charged.

If that were so, the Committee would indeed have violated Hamilton's due process right not to be convicted without any evidence of his guilt. But the exhibits to Hamilton's Complaint tell quite a different story:[12] There is an express statement in the Summary that says the Committee "read" the Report made by Hardin, which contains evidence that Hardin found the weapons at issue in Hamilton's cell while he "was shaking down resident Hamilton."

Faced with that statement, Hamilton urges this Court either to discount it or to find that the Committee had insufficient evidence properly to have found Hamilton guilty of the offense of possession of contraband. P.Mem. 7 seeks to support those arguments with a broad discussion of criminal law standards of proof. But that contention is wholly beside the mark in light of the dramatically different due process criterion applicable to prison disciplinary hearings, as definitively stated in *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455–46, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (citations omitted, emphasis added):

> We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits.... Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.... The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction nor any other standard greater than *some evidence* applies in this context.[13]

---

**12.** Although *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citation omitted) teaches that in general a court when considering a motion for dismissal under Rule 12(b)(6) "must accept petitioner's allegations as true," that rule does not apply here. *R.J.R. Services, Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989) (citation omitted) teaches:

> However, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law.

Hamilton's statement that the Committee considered no evidence is contradicted by the Summary, which must be accepted as true. *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974) (citations omitted) states:

> Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.

And that principle has always applied under Rule 12(b)(6) (see, *e.g.*, *Foshee v. Daoust Construction Co.*, 185 F.2d 23, 25 (7th Cir.1950)).

**13.** [Footnote by this Court] Even apart from that conclusive veto of any claimed application of federal criminal law standards, Hamilton's argument to that effect seems independently untenable. If the offense of possession of contraband is akin to anything, it might be com-

■ Thus the fact that the Committee read the Report, when coupled with its contents, suffices to defeat Hamilton's claim. Despite Hamilton's assertions to the contrary, the Committee did consider "some evidence." It is wholly irrelevant that a court might not convict a defendant of criminal charges on the slim evidence of a report. Every court that has considered whether a prison disciplinary committee could base its decision on such a report has upheld its use for that purpose.[14] For example, *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir.1990) found that "some evidence" did exist in a case similar to the one here. There plaintiff had been convicted by a prison disciplinary committee for possession of contraband that had been found in a locker box shared by plaintiff and his cellmate. Although the evidence in that case was confined to the incident report and the contraband, still the committee found the inmate guilty despite his testimony that he was innocent.[15]

P.Mem. 7 suggests that the "some evidence" rule implies that the Committee must have had evidence to prove every element of the offense of possession of contraband. But that too is not the rule.

All that the Committee must have is "some" or "any" evidence that points to Hamilton's guilt.[16] It may well be that the evidence against Hamilton is slim. But as *Hill*, 472 U.S. at 457, 105 S.Ct. at 2775 explains, "meager" evidence is still "some evidence." Indeed, *Hill*'s facts are analogous to those here. There the prisoners who had been found guilty of the assault had been seen fleeing with another prisoner from the scene of an assault. Both prisoners (as well as the alleged victim) testified that they were innocent (*id.* at 448, 105 S.Ct. at 2770). Explaining *Hill*, *Lenea*, 882 F.2d at 1176 points out:

> Although hardly convincing beyond a reasonable doubt, this evidence did tend to show that one of the fleeing inmates committed the assault.

Like Hamilton, the prisoner in *Hill* was found guilty even though there was no eyewitness account that proved the prisoner's guilt. *Hill*, 472 U.S. at 457, 105 S.Ct. at 2775 explained:

> Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence

pared to the offense of possession of an illegal substance under Illinois law. For example, see *People v. Birge*, 137 Ill.App.3d 781, 790, 92 Ill. Dec. 482, 489, 485 N.E.2d 37, 44 (2d Dist.1985) (citations omitted):

> To prove one guilty of possession of drugs, the State must establish a defendant's knowledge of the presence of the drugs and that the drugs were in defendant's immediate and exclusive control. Actual physical personal possession is not required, as possession may be constructive.... It is no defense that another had knowledge of the drugs and control of them, as defendant's possession may be joint with that of another.

There is "some evidence" of Hamilton's guilt under the standards enunciated in *Birge*. But Hamilton has not claimed in any event that state standards of proof have not been complied with, and this opinion need not address that issue. It is nonetheless worth observing that federal law recognizes and applies the identical concept of constructive possession. See III *Federal Criminal Jury Instructions of the Seventh Circuit* 119 (West Publishing Co.1986) and cases cited there.

**14.** Not only may the Committee consider first-hand reports but it may also admit other infor-

mation that might not be admitted in a criminal trial. For example, *Baker v. Lyles*, 904 F.2d 925, 932–33 (4th Cir.1990) approved a committee's consideration of a report that was based on hearsay of an unidentified informant, and *Lenea*, 882 F.2d at 1174 "expressly h[e]ld that polygraph test results are admissible in prison disciplinary proceedings."

**15.** Plaintiff's cellmate also submitted a statement on behalf of plaintiff, but the Committee decided that it did not "exonerate" him (*id.*).

**16.** Hamilton urges this Court to compare his case to that in *Lenea*, which held there was insufficient evidence for the committee there to have found a prisoner guilty of assisting in an escape. In *Lenea*, 882 F.2d at 1175 the only evidence that seemed to point to the prisoner's guilt was that he was in a chapel at the time and that he knew the escapees. Those facts did not point to his guilt, however, because the chapel was his assigned workplace and "it is hardly incriminating for a prisoner to admit he knows another" (*id.*). Furthermore, "Lenea was not shown to be in the area of the escape" (*id.* at 1176). In contrast, Hamilton was at the place of the crime, and there was "some evidence" pointing to his guilt.

that the findings of the disciplinary board were without support or otherwise arbitrary.

Hamilton's final evidentiary argument is that the Committee should have given more weight to his testimony or could have asked for more testimony (such as that of the officers involved) or could have obtained fingerprint testing of the weapons. But once it is established that there was some evidence pointing to Hamilton's guilt, the question of how the Committee could have weighed other evidence that it either heard or could have heard is beyond the power of this Court to consider.[17] *Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir.1989) (citations omitted) compels that conclusion:

> Under *Hill,* the courts are barred from assessing the relative weight of the evidence. It is therefore in general immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied or there are other extraordinary circumstances.
>
> Courts have followed this approach in decisions after *Hill.* While the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability, once the court has found the evidence reliable, its inquiry ends—it should not look further to see whether other evidence may have suggested an opposite conclusion.

In sum, this Court finds that there was "some evidence" that was considered by the Committee. Its inquiry into the sufficiency of the evidence is thus at an end.

### Procedural Due Process

As the preceding section of this opinion reflects, Hamilton coupled his attack on the sufficiency of the evidence considered by the Committee with the suggestion that his procedural due process rights were violated by the Committee's failure to call the officers as witnesses or to order fingerprint tests on the weapons. But over and above the just-announced conclusion, it is also not enough for Hamilton to point out some asserted procedural deficiency in his hearing to avoid dismissal of his claims. In that respect *Daniels v. Williams,* 474 U.S. 327, 333–34, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) teaches:

> We think the relevant action of the prison authorities in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause of the Fourteenth Amendment.

It may be that Hamilton intended to allege such a "deliberate decision" when he asserted (¶ 32) that defendants:

> impos[ed] punishment on him when they knew that there was no evidence that Hamilton was guilty of the disciplinary infraction of which he was charged.

But even apart from the already-discussed fact that the Report did contain "some evidence," Hamilton's argument collapses upon examination because he received all the process guaranteed to him by the Due Process Clause.

*Wolff,* 418 U.S. at 563, 566, 94 S.Ct. at 2978, 2979 sets forth the minimum procedures that are constitutionally necessary at a disciplinary hearing before good time credits can be taken away:

> These are advance written notice of the claimed violation and a written statement of the factfinders as to the evidence re-

17. It is uncertain whether, in light of the principle stated in n. 12, this Court is required for current purposes to credit Hamilton's allegation (¶ 21) that one unnamed Committee member said that he believed Hamilton's denial of the offense. After all, the Summary plainly states that the Committee considered both the Report and Hamilton's denial and found Hamilton guilty. It also appears from the Summary that the Committee did not believe the version of the search as told by Hamilton, instead summariz-ing the one stated in the Report: that the weapons were "found in the cell." But in any case what *is* certain is that any private reservation by a single Committee member does not taint the ruling of the Committee as a whole. In much the same way, any intermediate views held by Cobb as to Hamilton's credibility do not affect the situation as to Lane and O'Leary—as ¶ 29 alleges, they "relied entirely on the Adjustment Committee's reasoning."

lied upon and the reasons for the disciplinary action taken.

\* \* \* \* \* \*

We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

In addition, although there is no right to "confrontation and cross-examination" (*id.* at 567, 94 S.Ct. at 2980) or to counsel (*id.* at 570, 94 S.Ct. at 2981), under certain circumstances the prisoner may have a lay advocate (*id.* at 570, 94 S.Ct. at 2981). As the quotations earlier in this opinion reflect, those same rights are also mandated by Section 1003–8–7(e) and were also guaranteed to Hamilton in the Report.

■ Hamilton does not claim that the Committee failed to afford him any of those rights, and his Complaint really confirms that he was in fact afforded all of them. Thus the Report gave Hamilton "advance written notice" of the charge, and the Summary gave him the Committee's "written statement" of "the evidence relied upon and the reasons for the disciplinary action taken." And as for Hamilton's right to call witnesses, both the Report and the Summary—uncontradicted by Hamilton—state that he did not request that any witnesses be called. His suggestion now that the two officers who were present at the scene of the search would have corroborated his testimony had they been called certainly does not create an obligation on the part of the Committee to have called them as witnesses if Hamilton himself failed to ask that they be called.

■ Hamilton also urges that the Committee failed to answer Hamilton's request at the hearing to have the weapons tested for fingerprints. There is simply no due process right for Hamilton to demand such a test.[18] Even so, Hamilton does not explain how a fingerprint test would exonerate him. At most a fingerprint test of the weapons might have shown the absence of Hamilton's fingerprints and perhaps the existence of others. But such facts would not directly undercut the evidence in the Report. And as explained above, this Court is not empowered to reweigh the evidence.

Thus the Committee afforded Hamilton all the rights that are guaranteed by the Due Process Clause. Consequently this Court finds that Hamilton has failed to plead a procedural due process claim as well.

### Equal Protection

■ Hamilton's equal protection claim is founded on this statement in Complaint ¶ 21:

Hamilton asked why the four inmates in Cell C–226 had not [been charged], but his question was ignored.

That claim implies that the Committee was somehow implicated in Hardin's decision not to charge the inmates who were in the cell adjacent to Hamilton's.[19] Yet the Complaint contains no allegation that defendants had some direct involvement in the decision to charge Hamilton alone instead of the other inmates as well, nor does it allege that defendants' actions were deliberately indifferent to Hamilton's rights. But even if Hamilton *had* alleged either level of culpability by defendants, it could not be said that such actions would have violated Hamilton's equal protection rights.

---

**18.** Even in the more demanding environment of a criminal prosecution, it is questionable whether the convicted criminal defendant could later mount a successful challenge in a Section 1983 suit on the failure of a trial court to require such testing by the prosecution. For example, *Redman v. Dugger,* 866 F.2d 387, 390 (11th Cir. 1989) (citing *Arizona v. Youngblood,* 488 U.S. 51, 56 n. \*, 109 S.Ct. 333, 336 n. \*, 102 L.Ed.2d 281 (1988)) held that the defendants' failure to test the weapons for fingerprints would not be reversible error, because the "exculpatory value must be 'apparent'." And even if this Court

were now (despite the paucity of authority) to declare such a right to exist, Hamilton could have no Section 1983 claim against defendants because such a right was not "clearly established" at the time of the hearing.

**19.** Familiar Section 1983 principles of course forbid charging defendants under a respondeat superior theory with Hardin's failure to prosecute others. This opinion later deals with those principles in a somewhat different context.

For example, if the claim is one of selective prosecution, it plainly has no basis in law. Even in a criminal case a prosecutor can choose to file charges against one person and not another. As *Falls v. Town of Dyer, Indiana*, 875 F.2d 146, 148 (7th Cir. 1989) put it (in one of several illustrations):

> Speeders can't run to federal court when the police let many others, whose sin is worse, whiz by.

Nor is this a situation in which the prosecution was assertedly the product of invidious class-based discrimination (see *Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir.1987)) or a comparable vendetta against Hamilton (or Hamilton and his cellmates), either of which motivations could run afoul of the Equal Protection Clause.

What Hamilton suggests instead is meaningfully different: that Hardin did not want to charge the four gang members who were in the adjacent cell, and so Hardin chose Hamilton and his cellmates to "take the weight" (¶ 17). Under Hamilton's theory, the only reason that Hamilton and his cellmates could have been selected for that fate is that they happened to live next door to the gang members, who Hardin allegedly feared might cause violence or disruption in the prison. But even on that premise Hardin's actions did not violate Hamilton's equal protection rights. This was not the case of an officer arbitrarily arresting a person whom he knows to be innocent because he is afraid to arrest the guilty party. From Hardin's point of view as explained by Hamilton, both cells had "equal access" to the weapons (¶ 12). And once Hardin made his decision to charge Hamilton and the other members of his cell, their cases were decided *on their own merits*. There was no Equal Protection Clause obligation on the Committee to ensure that Hardin "charge or investigate" the prisoners in the adjacent cell who may have been equally culpable.[20]

Hamilton's other theories that there was such a discriminatory purpose (P.Mem. 9)—that there was a "reasonable inference that Officers Haywood and Martin knew where the weapons were before the search," and that the Committee decided to punish Hamilton, even if it thought he was innocent, because it had already punished his cellmates—are all misplaced. First, defendants are not obligated by the Equal Protection Clause to concern themselves with reasonable inferences—for them to be liable, *their* actions must have a discriminatory purpose. And second, Hamilton's assertions that the Committee believed that he was innocent are not borne out by the Summary—it refutes any notion that the Committee found him to be innocent.

In short, there was no allegation here that defendants had a discriminatory purpose in their actions, nor was such an allegation possible under the facts as presented by Hamilton. Hamilton's equal protection claim must also be dismissed.

### Liability of O'Leary and Lane

■ There is an independent basis for the dismissal of O'Leary and Lane in all events: They cannot be found liable under a respondeat superior theory. *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir.1988) (citations omitted) fleshes out that doctrine:

> There is no principle of superiors' liability, either in tort law generally or in the law of constitutional torts. To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct. That is a vague standard. We can make it more precise by noting that supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable, because negligence is no longer culpable under section 1983. Gross negligence is not enough either. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

Neither O'Leary nor Lane was involved in the charging of Hamilton or in the Com-

---

**20.** If Hamilton's theory that there was not enough evidence to find *him* guilty were to be accepted, it is difficult to imagine how the Committee could then have found the inmates in the adjacent cell guilty under the same standards and with the same proof. In that sense Hamilton's theory that the Committee punished him *instead* of the others falls of its own weight.

mittee hearing itself. Even if their respective actions in approving the results of the hearing in part or in full represented their personal involvement for purposes of potential Section 1983 liability, neither of them could be said to have violated Hamilton's due process or equal protection rights: Each based his decision on the Summary and the Report, both of which contain "some evidence" that Hamilton committed the offense. Furthermore, nothing in the allegations asserts any knowledge on *their* part of any claimed discriminatory purpose in Hardin's decision to charge only the inmates in Hamilton's cell, or in the Committee's refusal to answer Hamilton's inquiry about the other inmates who were not charged. And short of that, neither O'Leary nor Lane may be tarred with the Section 1983 brush.[21]

Absent any allegation that O'Leary and Lane were either directly involved in the alleged misconduct or were recklessly indifferent to the constitutional violations of which they had some knowledge, they cannot be held liable in this case. They must be dismissed regardless of the outcome as to the other defendants in this action.[22]

### Conclusion

At the core of Hamilton's claims is his repeated assertion of his innocence. Much of his Complaint and his Memorandum are devoted to facts that might arguably cast doubt on the correctness of the Committee's findings.

But this Court has no authority to review Hamilton's case de novo. It can only ensure that Hamilton is afforded his due process and equal protection rights at a hearing conducted by the Committee. In that respect "it appears beyond doubt that the plaintiff could prove no set of facts in

support of his claim that would entitle him to the relief requested" (*R.J.R. Services*, 895 F.2d at 280–81). Moreover, O'Leary and Lane are doubly insulated by the failure of the Complaint to allege a valid Section 1983 claim against them in their role as supervisors.

None of Hamilton's claims withstands dismissal. Ordinarily such a dismissal of a complaint does not trigger a final order of dismissal of the action as well. But the charged incident here is over six years old, and the lawsuit is nearly as whiskered.[23] More significantly, the flaws identified in this opinion are noncurable. This action is dismissed with prejudice.

---

**21.** See *Gaston v. Taylor*, 918 F.2d 25, 29–30 & n. 2 (4th Cir.1990) (supervisors may be liable for "indifference … in reviewing" a prisoner's conviction, but "negligent oversight" is not enough). *Jones*, 856 F.2d at 993 likewise requires that the supervisors' action must be taken "either knowingly or with deliberate indifference."

**22.** There is also no allegation that the Committee knew of the facts that support Hamilton's equal protection claim, except for the already-discussed question by Hamilton as to why the other inmates were not charged. Hence the

Committee members also could not be held liable for such a claim just because they were supervisors of Hardin's actions.

**23.** This Court inherited the case when it was already 3½ years old—the result of reassignment when one of its colleagues took senior status. As already stated, this Court appointed new counsel to represent Hamilton, and they have done him yeoman service—it was not their fault that his claims have ultimately proved untenable.