**Horace GRIFFIN, Plaintiff,**

v.

**James FAIRMAN, et al., Defendants.**

**No. 89 C 1917.**

United States District Court,
N.D. Illinois, E.D.

July 23, 1991.

---

Timothy Newitt, Johnson, Westra, Whittaker & Austin, P.C., Carol Stream, Ill., for plaintiff.

Vincent O'Brien, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Horace Griffin ("Griffin") has sued—among others—former Director of the Illinois Department of Corrections Michael Lane ("Lane"), Joliet Correctional Center ("Joliet") Warden James Fairman ("Fairman"), Menard Correctional Center ("Menard") Warden Mary Flannigan ("Flannigan"), Joliet correctional officer Lieutenant James Kelly ("Kelly") and Administrative Review Board members Chris Bowles ("Bowles") and L.V. Lipe ("Lipe") under 42 U.S.C. § 1983 ("Section 1983").[1] Griffin's Amended Complaint (the "Complaint")[2] seeks damages and an injunction based on alleged violations of his Fourteenth Amendment right to due process in connection with a disciplinary action that resulted in a loss of good time credits, a demotion in grade level and a period of disciplinary segregation.

Defendants have now moved for summary judgment pursuant to Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, this action is dismissed in its entirety.

---

**1.** Three other defendants, Menard Adjustment Committee members William Morken ("Morken") and V.R. Jones ("Jones") and Administrative Review Board member Michael Carter ("Carter"), have never been served with process. Although they are therefore not among the current movants, the analysis here serves to dispose of Griffin's entire Section 1983 action. "Defendants" is used in this opinion as a collective term to describe all the movants, with separate reference being made wherever necessary to the three individuals named in this footnote.

**2.** After this Court had appointed counsel to represent Griffin on a pro bono basis, counsel filed the Amended Complaint to replace Griffin's original pro se filing.

1274

*Facts* [3]

On May 16, 1987 [4] inmate Dennis Morris ("Morris") was stabbed on a West Cell-house gallery in Joliet. On May 20 Kelly interviewed Griffin in the Joliet Internal Affairs Office, telling Griffin that he was under investigation for the assault. During the interview Griffin gave Kelly a written statement denying involvement in the attack, refusing however to take a polygraph examination. That same day Griffin was taken to investigative segregation and served with an inmate disciplinary report that charged him with "assaulting any person" and "dangerous disturbances" (20 Ill.Admin.Code § 504 Table A, Offenses 102 and 105 [5]). What the report set out was simply that "[b]ased on information from confidential sources you are charged with the above name [sic] offenses" (D.Ex. 3).

On May 22 Griffin appeared before an Adjustment Committee ("Committee I"), which continued the hearing pending investigation. During his deposition in this action Griffin testified that on his May 22 appearance he presented a written list of questions that he had previously sent to Lane and Fairman and that he wanted to have the Committee ask of the confidential sources (Griffin Dep. 34). Additionally he asked for certain documents as well as a counselor to process his questions to the sources (*id.*). Griffin also said that he had talked to Fairman on May 21 (telling Fairman that his right to have questions asked of the witnesses was being denied) and that he again spoke to Fairman on May 29 (telling Fairman that he had not yet seen a counselor and asking to see Counselor Theodore) (*id.* at 44–50). Griffin said that

Fairman did not respond to his requests during those conversations. However, Griffin said that Theodore did come and speak with him on May 29, when Griffin requested that Theodore ask certain questions of the confidential witnesses (*id.* at 54–55). Griffin said that Theodore reviewed the list of questions but did not take it with him and that Theodore generally disregarded Griffin's request (*id.* at 55–56).

In the meantime Kelly prepared an investigation report on May 28 (D.Ex. 4). Kelly's report contained summaries and signed statements from the five interviews he had conducted with Griffin, Morris and three other inmates who identified Griffin as Morris' assailant.

On June 10 Griffin appeared before Committee I [6] for a hearing. In Committee I's written summary of the proceedings, it noted that Griffin had requested that all confidential witnesses be questioned by Committee I. However, Griffin's request was denied because (D.Ex. 5):

> Request for witnesses not timely, because on 6-10-87 Inmate Griffin came in with a list. He has had 22 days to submit all of the questions.
>
> \* \* \* \* \* \*
>
> Calling witnesses would undermine authority or jeopardize security.

Griffin denied the assault, and the Committee stated that he said (*id.*) "[h]e was trying to help other inmates from getting extorted and commisary [sic] stolen." After consideration Committee I found Griffin guilty of both charges, based on the confidential information from Morris and the three other inmates who were eyewitnesses

---

**3.** Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable" (*Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted)) in the light most favorable to the nonmovant—in this case Griffin. All references to exhibits submitted in support of defendants' motion will take the form "D.Ex.—" D.Ex. 1, Griffin's deposition in this case, will be cited simply "Griffin Dep.—."

**4.** All further references to dates without any year designation also refer to 1987.

**5.** Further references to sections of chapter 20 of the Illinois Administrative Code will take the form "Section—."

**6.** Griffin testified that he found out about the hearing only on that day (Griffin Dep. 58), while Committee I's written summary of the hearing states that the Chairman had told him during the first week of June that his hearing would be in the second week of the month (D.Ex. 5).

to the assault and stabbing of Morris (*id.*). As disciplinary action, Committee I revoked 360 days of Griffin's good time credits, demoted him to "C" grade for 360 days[7] and sentenced him to segregation for 360 days (minus 22 days already served). Fairman's designee approved Committee I's decision. Griffin was immediately served with a copy of the Adjustment Committee Summary containing the information described in this and the preceding paragraph, with the names of all confidential sources except Morris redacted.

Griffin went on a hunger strike shortly thereafter and was transferred to Menard Psychiatric Center on June 18. Although the reasons for that transfer are not entirely clear, the transfer itself is not material—and Griffin testified that he agreed to the transfer (Griffin Dep. 66).

On June 23 and 24 a polygraph examiner issued a set of reports (part of D.Ex. 4) reflecting the results of a number of examinations that he had conducted. Those reports found that Morris and two of the confidential sources were truthful as to their identification of Griffin as Morris' assailant, while the polygraph results from the other source were inconclusive.

On July 9 Lane concurred in an order by the Administrative Review Board (the "Board") to remand Griffin's case for a rehearing (D.Ex. 7) "for the disciplinary report to be rewritten, reserved and reheard to include more specific information in order for the inmate to be able to defend himself." Thereafter Kelly prepared a new disciplinary report stating (D.Ex. 8):

> As the result of an investigation, you are being charged with an assault on Inmate Dennis Morris, N52362, which took place on the 3 & 4 gallery flag in the West Cellhouse at approximately 5:00 P.M. on May 16, 1987. Inmate Morris and three other inmates have identified you as being the assailant. This assault was initiated due to a dispute over gang leadership.

Although that report is dated July 23, it was not served on Griffin until 6:50 p.m. August 2 (*id.*).

At or before 1:03 p.m. on August 3 (see D.Ex. 9), Griffin appeared before another Adjustment Committee ("Committee II") at Menard for a hearing. At that time Griffin did not request that witnesses be called or questioned, nor did he attempt to introduce any documentary evidence. Committee II's written summary paraphrased Griffin's testimony (*id.*):

> The inmates who did the assault are trying to make it look like I did it. The man who was assaulted did not accuse me, the other inmates did.

Griffin was found guilty for these stated reasons (*id.*):

> Inmate Griffin indicated "other" inmates did the assault and were trying to frame him but did not identify those inmates. A review of the investigation reports reveals that victim Morris N52362 and three (3) other inmates gave statements that Griffin, N11861, did assault Morris with a weapon (knife). The Committee feels that Griffin is guilty and the below action is warranted.

Committee II's disciplinary action was identical to Committee I's earlier sanction: It revoked 360 days of Griffin's good time, demoted him to C grade for 360 days and imposed 360 days of segregation. Flannigan approved Committee II's decision.

Griffin grieved that decision to the Board. On August 17 the Board met with Griffin and, after reviewing all relevant documents, stated (D.Ex. 10):

> Based on a total review of the information available and a compliance check of the procedural due process safeguards outlined in Departmental Rule 504, the Panel is reasonably satisfied the inmate committed the infraction. Therefore, the Panel recommends the inmate's grievance be denied.

Griffin was also charged criminally in Will County for the assault on Morris on charges of aggravated battery and compelling organization membership. Morris then signed an affidavit in that proceeding on April 27, 1988, stating that he had not been assaulted by Griffin and that he did not want to prosecute the case (D.Ex. 11). Charges in the case were dismissed.

---

7. See Section 504.130, describing the decreasing amount of institutional privileges attached to grades A, B and C.

Griffin's Complaint alleges that he was deprived of his right to a fair hearing in that (Complaint ¶ 13, quoted verbatim):

(a) he was not afforded a lay advocate in the process.

(b) The prison authorities, did not interview witnesses as requested by the Plaintiff.

(c) They relied on testimony which may have been false.

As indicated earlier, Griffin seeks money damages in the amount of $50,000 and an injunction requiring defendants to return Griffin to his previous grade and credit him with 360 days of good time.

*Requirements of Procedural Due Process*

■ Whether there has been a violation of procedural due process is answered in two steps (*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)):

1. Is there a liberty or property interest of which the State has deprived the plaintiff?

2. If so, were the procedures attendant upon that deprivation constitutionally sufficient?

Griffin gets an affirmative answer—in part—to the first question, but defendants prevail because the second question is also answered "Yes."

■ As to the first step, *Gilbert v. Frazier*, 931 F.2d 1581, 1582 (7th Cir.1991), citing *Hewitt v. Helms*, 459 U.S. 460, 469–72, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983), explains:

A statute, regulation, or other legislative-type enactment that establishes a definite standard to guide the decision whether to (further) restrain a prisoner's freedom of action, rather than confiding the decision to the discretion of the administering authorities, is deemed to create a constitutionally enforceable entitlement to be free from that restraint unless the standard is applied to the prisoner in accordance with procedures that satisfy the requirements of due process of law.

*Gilbert, id.* held that Illinois had done just that in promulgating Sections 504.10 to 504.150.

Of course that is precisely the same set of regulations that are at issue in this case, and the same "definite, unqualified, nondiscretionary standard" (*id.*) that *Gilbert* held Illinois had established for determining when prison officials impose temporary confinement (Section 504.40) applies equally to the determination of when those officials may impose the various other penalties described in the regulations. Revocation of good time credits, segregation and demotion in grade are all penalties (permissible for the infractions relevant in this case, see Section 504 Table A, Offenses 102 and 105) that the regulations state cannot be imposed without a hearing (see Section 504.20(a)) conducted in accordance with the mandatory procedures set out in Section 504.80. By operation of Illinois law, then, Griffin has a liberty interest in good time credits,[8] in freedom from segregation[9] and

8. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) held that if a state creates a right for a prisoner to earn good time credits:

the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

This Court has previously held that Illinois has established such a right by means of Ill.Rev. Stat. ch. 38, ¶ 1003–8–7(e), which mandates that certain principles (including entitlement to a hearing) must be adhered to before good time can be revoked (*Hamilton v. Scott,* 762 F.Supp. 794, 798 (N.D.Ill.1991)).

9. *Hewitt,* 459 U.S. at 470–72, 103 S.Ct. at 870–71 held that a state creates a liberty interest when it provides a prisoner with the right to remain free of segregation unless the prisoner violates specific conditions. As further support for the holding here just as in *Hamilton,* Ill.Rev.Stat. ch. 38, ¶ 1003–8–7(e) provides that the same set of mandatory principles that must attend the loss of good time credit also applies to the imposition of disciplinary segregation (see also *Jackson v. Lane,* 611 F.Supp. 933, 935–36 (N.D.Ill.1985), holding that Illinois has created a protectible liberty interest in remaining in the general prison population, but not citing to the particular statute or regulation at issue).

in his grade classification.

However, another element of the first step in a procedural due process analysis is that the plaintiff had to be *deprived* of such an interest by the State. Proof of such a deprivation is a specific requirement contained in the words of Section 1983 itself (emphasis added):

Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the *deprivation* of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable....

██ That requirement is relevant here to the extent that Griffin complains of violations of procedural due process related to the June 10 hearing. Because Griffin was granted a rehearing that became the final decision upon which the Committee ultimately took disciplinary action, he was never actually deprived of his liberty interests as a result of the June 10 hearing. Whatever claims he had after the June 10 hearing became irrelevant once the Board found that the initial disciplinary report had involved insufficient notice to Griffin and therefore ordered a new hearing. In asserting due process violations, then, Griffin can point only to procedures surrounding the August 3 rehearing pursuant to which he *was* deprived of the liberty interests at issue here.

That leads to the second step of the procedural due process analysis. In that respect *Wolff,* 418 U.S. at 564–70, 94 S.Ct. at 2978–81 clearly marks out the minimum procedural safeguards constitutionally due to a prisoner in a hearing before good time credits can be revoked:

1. written notice of the charges, both to inform the prisoner of the charges and to enable him to marshal the facts and prepare a defense;

2. at least a brief period of time after the notice, no less than 24 hours, to prepare for the hearing;

3. the right to call witnesses and present documentary evidence in defense when permitting the prisoner to do so

will not be unduly hazardous to institutional safety or correctional goals;

4. the right to assistance by a fellow inmate (or, if forbidden, by staff personnel or their designee) in disciplinary hearings *only* when the prisoner is illiterate or when the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. a written statement of the factfinders as to the evidence relied upon and the reasons for their action.

This opinion has already held that Griffin's claims of inadequacy of the procedures related to the June 10 hearing are immaterial here.[10] As for the August 3 hearing, Griffin does not challenge the procedures surrounding that proceeding—indeed, he did not then request that witnesses be questioned or that counsel be appointed, as he did with respect to the earlier hearing. There is nonetheless a question on the record before this Court whether Griffin was given less than 24 hours after the notice of that hearing to prepare. As already noted, *Wolff* mandates that 24 hours be the bare minimum notice to be given to the prisoner to fulfill the requirements of due process.

██ In this instance Griffin refused at 6:50 p.m. August 2 to sign the new "ticket" (Inmate Disciplinary Report) that repeated the charges against him and also refused to sign a waiver of the 24–hour provision on the same form (D.Ex. 8). It was about 18 hours later that Committee II reached its decision after the second hearing. Because the *purpose* of notice is to inform the prisoner of the charges and to enable him or her to prepare a defense, it is at a minimum arguable whether Committee II's noncompliance with the 24–hour requirement implicates a due process violation in light of Griffin's earlier knowledge stemming from the Committee I procedure (cf. this Court's decision in *Harris v. Mac-Donald,* 532 F.Supp. 36, 40 (N.D.Ill.1982), where the lack of 24 hour notice was found to have been rendered harmless by a 20 day continuance). Nonetheless this opinion

**10.** See Appendix.

will assume arguendo that it does, so that *some* due process claim might have been actionable in that respect even though it was not advanced either in Griffin's original. pro se Complaint or in the revised version prepared by appointed counsel.[11]

That assumption cannot keep Griffin in court with a viable claim, however. Before this opinion explains why that is so, one other preliminary issue should be mentioned: Griffin has not specified whether he is suing each of the defendants in their official or personal capacities, a necessary prerequisite to a determination of liability as well as an appropriate award in a Section 1983 suit (*Hill v. Shelander*, 924 F.2d 1370, 1372–73 (7th Cir.1991)). Again this Court will give Griffin the benefit of the doubt—it will assume arguendo that both capacities were intended, because liability cannot be established for either.

■ In part Griffin must be viewed as pursuing an official capacity suit—he requests injunctive relief (good time credits and a return to his previous grade level), a form of relief that can only be granted in official capacity suits (see *Akins v. Board of Governors of State Colleges and Universities*, 840 F.2d 1371, 1377 (7th Cir. 1988), holding that even though plaintiffs sued the defendants only in an individual capacity the complaint read as a whole showed that plaintiffs intended to press a claim for injunctive relief), and he describes the official supervisory duties of each defendant in the Complaint. But because the real party in interest in an official capacity suit is the governmental entity itself, Griffin must additionally allege that "the defendant was party to the execution or implementation of official policy or conduct by a government" (*Hill*, 924 F.2d at 1372). As *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) puts the matter in its most-frequently-cited form:

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Many cases have occupied themselves with efforts to refine that concept. But there is no doubt that however informal the action sought to be ascribed to the governmental agency, it must "reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights" (*Wolf–Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983)). To like effect *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) has stated:

**11.** That arguendo assumption obviates the need to decide whether a due process claim that appointed counsel *did* advance on his behalf—the assertion that, due to Morris' affidavit denying Griffin's involvement, Committee II based its decision on false evidence—could ultimately survive analysis. But in that respect *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (emphasis added), dealing with a similar situation, teaches that "the requirements of due process are satisfied if *some* evidence supports the decision by the prison disciplinary board to revoke good time credits." *Hill, id.* at 448, 456–57, 105 S.Ct. at 2770, 2774–75 found that sufficient evidence supported the board's decision even though the victim had signed a statement that the other inmates had not assaulted him. In this case, not only did Morris sign the affidavit in a *later* proceeding but the evidence before Committee II included three other statements identifying Griffin as the assailant. No prison administrator can be found in hindsight to have acted unconstitutionally because of a later recantation by one of several witnesses who had fingered the inmate as the culprit at the time of the hearing. Moreover, as stated in *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir.1989) (citations omitted):

> Under *Hill,* the courts are barred from assessing the relative weight of the evidence.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> While the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability, once the court has found the evidence reliable, its inquiry ends—it should not look further to see whether other evidence may have suggested an opposite conclusion.

Assessment of the reliability of confidential information is indeed considered a further procedural due process requirement by our Court of Appeals (*Wells v. Israel*, 854 F.2d 995, 998–99 (7th Cir.1988), citing *McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982)). Here Griffin does not and cannot complain that the evidence as a whole was unreliable—it is scarcely unreasonable that at least three of four confidential statements at issue were relied upon because they were found truthful according to the polygraph results.

Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

Griffin has not offered any argument, much less evidence, that any arguable denial of procedural due process was linked to an official policy or custom. Certainly the facts contain no indicium of an official policy or custom that led to giving a prisoner less than 24 hours notice before his disciplinary hearing—if anything the facts point in the opposite direction.[12]

■ On the other hand, "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right" (*Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (emphasis in original)). *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982) (citations omitted) summarized the requirements of an individual capacity suit in this manner:

To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right. However, a defendant's direct participation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.

In sum, the named defendant or defendants must have caused or participated in the alleged constitutional violation and cannot be found liable on the basis of a respondeat superior theory (*Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (citations omitted)):

There is no principle of superiors' liability, either in tort law generally or in the law of constitutional torts. To be held liable for conduct of their subordinates, superiors must have been personally involved in that conduct. That is a vague standard. We can make it more precise by noting that supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable, because negligence is no longer culpable under section 1983. Gross negligence is not enough either. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

■ What of the named defendants (both served and unserved) here? They may be ticked off quickly:

1. Fairman had no involvement in the August 3 proceeding at all.

2. Kelly prepared the revised disciplinary report in time for it to be reviewed and approved by his supervisor on July 23. Though for some reason Griffin did not receive it until less than 24 hours before his August 3 hearing, nothing connects Kelly with that delay.

3. Morken, Jones and the third (unidentified) member of Committee II have never been brought into the case by service of process. Griffin did not name them in his original Complaint, and even though appointed counsel added them to the Amended Complaint, that took place after the Section 1983 two-year statute of limitations (*Kalimara v. Illinois Department of Corrections,* 879 F.2d 276 (7th Cir.1989) (per curiam)) had already elapsed. No Section 1983 action may be asserted against them under those circumstances.

4. Flannigan approved the Committee II decision on August 5. No evidence places her on notice of the less–than–24–hours notice that had been afforded Griffin (the Adjustment Committee sum-

---

**12.** Thus the very presence on the Adjustment Committee form of a reference to the 24–hour provision, together with its express recognition of the need to obtain a waiver from the prisoner if less than 24 hours' notice were given, negate any inference that the official policy was to deprive the prisoner of such notice.

mary, on which she indicates "Approved" or "Not Approved" by checking a box, shows the time and date of Committee II's recommendation for disciplinary action, but not the time that Griffin was served with the "ticket").

5. Although Bowles and Lipe (as well as unserved defendant Carter) did serve on the Administrative Review Board that reviewed and approved Committee II's decision on the merits, there is nothing to indicate that Griffin had grieved that latter decision based on any claim of insufficient notice. Certainly nothing suggests that any of those three defendants is culpable under the standards set out in either of the last two sentences that this opinion has quoted from *Jones* as to the lack of adequate notice of the Committee II hearing.

6. Lane approved of the imposition of the ultimate penalty as earlier approved by the Administrative Review Board. What has been said as to that Board's members applies to Lane as well.

In sum, no viable claim exists as to *any* of the defendants.

### Conclusion

No genuine issue of material fact exists as to Griffin's claim of a due process violation under Section 1983. All defendants (both served and unserved) are entitled to a judgment as a matter of law. This action is dismissed in its entirety.

### APPENDIX

As the text of this opinion reflects, Griffin cannot complain in due process terms of any asserted inadequacy of the procedures afforded him in the June 10 hearing, which was wholly superseded by the August 2 hearing. Nonetheless this Court feels constrained to point out that each of his procedural due process claims as to the earlier hearing would fail in any event under the standards set out in *Wolff*.

For one thing, *Wolff* does not entitle Griffin to the appointment of counsel. As for the assistance of a nonlawyer, Griffin is neither illiterate nor are the issues in his case complex—the standards set by *Wolff* for the rendering of such assistance. Griffin makes the argument that he should have had someone to aid him in questioning the confidential sources, but that hardly makes his case unique or complex. Indeed, *Wolff* implied that a desire for confidentiality would be common in such disciplinary actions and stated that a prisoner has no unqualified right to question such witnesses in the first place.

As for Griffin's requests to have witnesses questioned, although Sections 504.80(b)(3) and (4) do state that a prisoner has a "right to ask that witnesses be interviewed" and "may ask the Committee to question witnesses along lines he suggests," it may be observed that those regulations are *procedural* guidelines attendant on the liberty interest itself and do not in themselves implicate a liberty interest (in that respect, see *Colon v. Schneider*, 899 F.2d 660, 670 n. 16 (7th Cir.1990) and cases cited there). But that apart, such a right is not constitutionally mandated by *Wolff*, which expressly says that the granting of requests such as access to other inmates to collect statements is discretionary (418 U.S. at 566–67, 94 S.Ct. at 2980):

> The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.